Eaves & Collins vs. The Cherokee Iron Company.

---

EAVES & COLLINS *vs.* THE CHEROKEE IRON COMPANY.

73  459
o112 987

73   459
f127  220

1. The charge sent up in full in the record appears to be a plain, full and complete presentation of the issues before the jury and the law bearing thereon. The errors assigned on portions of it, and the refusal to charge other points, read in connection with it, contain no substantial errors which demand a new trial.

2. When a contract is in writing, each party has a right to expect the other to do precisely what he promises; but if, in the course of the execution of its terms—the carrying them into practical execution in a continuous business—some of these terms are departed from, and money is paid and received on that departure for some time, then, before the one can recover from the other for failure to pursue the letter of the agreement, he must notify him with clearness of his purpose thenceforth to stand on the original contract. Until such notice, the departure is a sort of new agreement.

3. If both parties to a contract abandon it, one cannot recover for its breach by the other.

(a.) There was sufficient evidence on which to base such a charge. If not, it hardly hurt the plaintiff.

4. Where one party to a contract agreed to furnish and the other party to receive twenty thousand tons of iron ore at the rate of fifty tons per day, and with the right in the party furnishing it to elect to furnish a second lot of twenty thousand tons, it was necessary to
• notify the other party of such election within a reasonable time; and the time required to complete the delivery of the first twenty thousand tons would be the longest which could be allowed as reasonable.

5. The judge having thoroughly examined the case and granted a new trial, unless the defendant below would write off a large part of the verdict which the jury gave it, by way of set-off, and having approved the verdict with such part written off, and the charge being fair, and there being no substantial error of law, a reversal will not be granted.

January 6, 1885.

Charge of Court. New Trial. Contracts. Verdict. Election. Notice. Before Judge BRANHAM. Polk Superior Court. February Term, 1884.

Eaves & Collins brought suit against the Cherokee Iron Company for breach of the following contract:

"STATE OF GEORGIA—Polk County.

This contract, made and entered into this day, between the Cherokee Iron Co., of the county aforesaid, of the one part, and Eaves & Collins, a firm composed of N. S. Eaves and Martin Collins, of the county of Bartow, in said state, of the second part, witnesseth that the said Eaves & Collins agree to raise and roast for said Iron Co., at their Fish Creek ore bank, twenty thousand (20,000) tons of ore at and for the sum of one dollar and twenty-five ($1.25) cents per ton, delivered on the cars. Said Eaves & Collins have the privilege of delivering forty (40,000) thousand tons on the same terms, if they should so desire. The said Eaves & Collins are to furnish the wood necessary for the roasting of said ore, to be taken from the lands of said Iron Co. without charge. The said Eaves & Collins agree to deliver on board the cars at said bank fifty or sixty tons of said ore so raised and roasted per day (Sundays excepted), and to commence the delivery of same on or before the 1st day of April next. The said Iron Co. agree to receive from fifty to sixty tons of said ore per day (Sundays excepted), and to furnish said Eaves & Collins all necessary chutes and screens for the delivery of said roasted ore on the cars, and also the necessary amount of charcoal braze at said ore bank, and haul free on the cars all wood delivered on the line of the railroad for the purposes aforementioned; also to furnish one track scales at the said bank and pay to said Eaves & Collins the amounts due for said ore monthly. If it becomes necessary to extend the track on the south side of said ore-bank or hill, Eaves & Collins are to do the work, said Iron Company furnishing the rails, cross-ties and other material. The understanding is that the said Eaves & Collins have the right of mining at any part of said ore-bed, the same to be done in a proper and skillful manner. Witness our hands and seals this February 1st, 1881."

The breaches of this contract alleged were the failure to furnish any chute or screen at the time for delivery, and not until a month and a half thereafter; that defendant failed and refused to furnish necessary chutes and screens to enable plaintiffs to deliver according to contract; that defendant refused to furnish track scales or charcoal braze,

or to receive from fifty to sixty tons of ore per day; that it received no regular amount per day, and for many day$_s$ refused to receive any at all; that plaintiffs were induced to continue work by the promises of defendant to comply with the contract, until July 15, 1882, when plaintiffs renewed their request for a compliance, elected to deliver the 40,000 tons of ore under the contract, and so notified defendant, but the latter refused further to comply with the contract. Damages were laid at $30,000.00. It was further alleged that plaintiffs, in order to carry out the contract, had erected permanent improvements on the land of defendant, at a cost of $1,810 00, for which defendant refused to pay. Plaintiffs also claimed compensation for extra work in beating ore through smaller grates than those contemplated in the contract; and lastly, there was a count on an open account.

Defendant pleaded the general issue, and, in brief, as follows: Plaintiffs never elected to raise and roast the forty thousand tons, or twenty thousand tons in addition to the amount first named in the contract; the attempted election was not in good faith, but merely to get some technical advantage of defendant, and was not made within a reasonable time. Plaintiffs were not damaged by defendant's failure to put in track scales. By going on allowing defendant to weigh the ore and receiving pay for it, plaintiffs waived the right to demand the track scales, or to recover for failure to put them in. The obligation on the part of defendant to receive the 50 or 60 tons per day ceased to exist on and after 17th May, and by reason of plaintiff's delivering and receiving pay for a less quantity than 50 or 60 tons per day, for a long period, say fifteen months, they waived their right to demand that it be received in said quantities. Defendant, during said fifteen months, was willing to and did pay plaintiffs for all the ore actually raised and delivered; it was willing to pay for all ore plaintiffs actually raised and roasted, and had paid them largely in advance of the quantity actually raised

and roasted. Plaintiffs had damaged defendant by un-skillful mining, and leaving the ore bed in bad condition, and by furnishing ore badly roasted, and of such quality as to clog and chill defendant's furnace to its damage. This was pleaded as recoupment. Plaintiffs were indebted to defendant in a large amount, upon account, which is pleaded as set-off, the balance appearing due defendant thereon being $1,761.62.

It is unnecessary to detail the evidence. The jury found for the defendant against the plaintiffs $1,198.90 principal. Plaintiffs moved for a new trial, on the following grounds:

(1) to (4), (6.) Because the verdict was contrary to law, evidence and the charge of the court.

(5.) Because the court charged as follows: " The de-fendant was bound by the contract to furnish one track scales at the ore-bank. The plaintiffs claim that the de-fendant failed and refused to furnish such track scales, and that, by reason thereof, they were damaged $500.00, and they claim that they demanded such scales under the con-tract of the defendant. If the defendant failed and refused to furnish such scales, and the plaintiffs were damaged thereby, they would be entitled to recover such damages as they have sustained, if they have sustained any on this account."

(5a.) Because the court charged as follows: " If the plaintiffs, while the ore was being delivered, acquiesced in the manner of weighing the ore and in the use of defend-ant's scales in Cedartown, and did not object thereto or give defendant reasonable notice that scales would be required as provided by the contract, at the chute or ore-bank, then they would not be entitled to recover damages on this account, nor would they be entitled to damages on this account, if they have received credit for all the ore actually delivered. The defendant in such case was bound to furnish the weights of the ore to the plaintiffs, if he un-dertook to weigh it for them, and if he did so correctly, no damages can be recovered on this account. If he did not,

they can recover for any ore not credited to them by the defendant."

(7.) Because the court charged as follows: " And if the plaintiffs were not ready on the 1st of April, 1881, to comply with their part of the contract; or if the ore was then and thereafter, and until July 15th, 1882, being mined and received in best (less ?) quantities, and in manner otherwise than as the contract provided for, and if plaintiffs acquiesced therein, or if the plaintiffs, during the time, did not simply complain and did not give the defendant reasonable notice that they were standing on their contract, and that he would be expected to receive daily, Sundays excepted, from fifty to sixty tons of ore, then the plaintiffs would not be entitled to recover damages on this account for defendant's failure to receive such amount of ore."

(8.) Because the court charged as follows: "If the plaintiffs began work for the defendant, and continued to work, getting ore for him in irregular and less quantities daily than the contract called for, and the defendant so receiving it from April 1, 1881, to July 15, 1882, and if the plaintiffs did not reasonably demand, monthly or otherwise, the performance of the contract, but acquiesced in what was being done during the time, and received payments accordingly, then the plaintiffs would not be entitled to recover damages for any deficiencies on account of ore not mined and received during that period."

(8a.) Because the court charged as follows: " Indefinite and uncertain complaints that the defendant was not taking as much ore as the contract required to be mined and received during this time, would not alone entitle the plaintiffs to recover on this acount. It must appear that the plaintiffs, during this time, stood on their contract, and if it had been, and was being departed from, notified defendant, with reasonable certainty, that an extra chute and screen and more braze were necessary and would be required, and that he would be expected to receive from fifty to sixty tons of ore per day, Sundays excepted, and

that the plaintiffs were ready and able and willing to perform their part of the contract, so that, if ore was being mined and received in less quantities, and in manner otherwise than as the contract required, the defendant would be put on notice that the plaintiffs were standing on their contract, and that he would be expected to fulfill his part thereof, and that the defendant thereupon failed and refused to perform his part of it."

(9.) Because the court charged as follows : "If the parties abandoned the contract, then the plaintiffs would not be entitled to recover."

(10.) Because the charges of the court embraced in the grounds marked 5, 7, 8 and 9 do not give the law applicable to the facts as they appear in the evidence, and do not correctly state the legal rights and duties of the parties to the contract; and that portion of the charge marked 9 (in the grounds of the motion) is not authorized by any testimony in the case, and all of said charges are inconsistent with and contradictory to that part of the charge quoted in 6th ground of motion.

(11.) Because the court charged as follows : "Said Eaves & Collins have the privilege, under the contract, of delivering forty thousand tons on the same terms, if they should so desire, i. e., twenty thousand additional to the twenty thousand contracted for in the first part of the contract. This provision of the contract was not obligatory on the defendant until the plaintiffs should give notice to the defendant that they had elected to raise and roast the additional twenty thousand tons, and the plaintiffs were bound to give notice of such election within a reasonable time. A reasonable time would be any time prior to the lapse of such time as was necessary to deliver the first twenty thousand tons at the rate of fifty or sixty tons per day ; notice after that time would come too late ;" and because the court failed to construe properly that portion of the contract attempted to be construed in the part of the

charge above quoted, and nowhere does the court correctly construe that portion of the contract.

(12.) Because the court refused to charge as follows: "At any time during the progress of the work (before plaintiffs abandoned the work), they had the right to elect in good faith to raise, roast and deliver, according to the contract, such quantity of ore as, together with what had been delivered, would make forty thousand tons, and if, under the principles of law as given you, you should find that plaintiffs, by delivering ore in less quantities than fifty to sixty tons per day for a considerable time (fifteen or fifteen and a half months, as you may find from the testimony), waived the right to hold defendant liable for not receiving the ore in quantities specified in the contract, and that they are estopped from recovering damages for defendant's failure to receive the ore, as to quantity, according to the contract; in other words, if you should find that plaintiffs have waived this right as to the ore previously delivered, that would not affect the right of the plaintiffs to deliver what remained to be delivered according to the contract."

(12a.) Because the court refused to charge, as requested in writing by plaintiffs' counsel, as follows: "Plaintiffs had the right to elect to deliver, and to deliver the remainder, according to the terms of the contract in all respects, including the right to deliver not less than fifty tons per day. If you believe that plaintiffs proposed to deliver this remainder of ore according to the contract, and desired, and in good faith intended, so to deliver it, and the defendant declined to receive it, or was unable to receive it according to the contract, and announced his purpose not so to receive it, then plaintiffs would be entitled to such damages as directly and naturally resulted from the failure of defendant to carry out the contract, the said damages to be estimated according to the rules for estimating damages which have been, and will be, given to you. I charge you, there could be no waiver of the right to deliver

v 73-31

the ore previously delivered, at the rate of fifty or sixty tons per day, if plaintiffs, while delivering that ore, insisted that they had the right to deliver it at the contract rate, from fifty to sixty tons per day."

(13 ) Because the court refused to charge, as requested in writing by plaintiffs' counsel, as follows :

" An estoppel is where one party says or does something upon which the other party acts to his own prejudice, or the benefit of the other party making the statement or doing the thing which is thus acted upon.

To constitute such estoppel, there must be the following elements, to-wit : First: There must be something said or done calculated to create an impression upon the other party. Secondly : Such other party must act upon it. Thirdly : The acting thus induced must be to the prejudice of the party thus influenced to act, or to the benefit of the other party."

(13a.) Because the court refused to charge as follows : " If the evidence shows that the defendant broke the contract by failing to supply track-scales or chutes as required by the contract, or in failing to receive ore as required by the contract; and if the plaintiffs went to work upon the faith that these articles would be supplied and the ore received as required by the contract; and if the defendant's president, West, knew, or had reason to believe, that they did commence the work upon such expectation ; and if, after the work was commenced, plaintiffs notified West that they desired the company to comply with the contract; and if West promised compliance, and plaintiffs continued to work upon such promise, then defendant cannot set up the fact that plaintiffs continued the work after such breaches, as a reason, by way of estoppel or otherwise, against their claim for damages for such breach or breaches."

(14.) Because, if the charge of the court embraced in the 7th and 8th grounds above is correct law as far as it

goes, it is only the law favorable to defendant's theory of the case, and his view of the evidence, and applicable to the evidence introduced by defendant; and said two charges were not limited and modified as requested by plaintiffs' counsel, and set out in ground marked (13a.) above taken, which modification, plaintiffs' counsel insisted, was required by plaintiffs' testimony, and which view of the law was authorized by plaintiffs' theory of the case, and sustained by the evidence introduced by them.

(15.) Because the court erred in charging the jury as follows: "The several items in the last part of the defendant's account, under date of December 1, 1882, headed, 'To Sunday items for delivery, etc., of ore which E. & C. failed to deliver,' were admitted in evidence, in connection with other proof on the subject, as one of the methods of enabling you to find the amount of ore and the value thereof, which it is said was left by plaintiffs on the 15th July, 1882, in an unfinished condition, when, it is said, they abandoned the mines. It is said that parts of the two kilns of this ore so left were unroasted, and the kilns had to be completed and burned, and this work was necessary to prepare the ore for use; and also the unburned could not be well valued until this was done. See how much labor and ore was added to these kilns; whether such addition was done at reasonable costs, not to exceed the contract price. If such was the case, then, as one of the methods of finding the value of the unroasted ore so left at the mine, you may take this evidence into consideration. You are not bound to find the value of this ore in this way. You may find its value in any way authorized by the evidence. This is but one mode of doing so, the items referred to being what it cost defendant to put said ore in condition to be delivered, and of delivering it on the cars."—The objection to this charge was thus stated: "It was, in effect, allowing defendant to do something for plaintiffs, and give in evidence what it cost him to do it, when, if plaintiffs were properly chargeable with it at all, what it was reasonably

worth to do the work should have been the evidence by which to fix the amount of the charge, and not what it cost to do it, or what was paid for it."

· (17.) Because the court, over the objection of plaintiffs' counsel, permitted a witness, Kendrick, to testify in reference to preparing the ore plaintiffs left at the mine unroasted for delivery, and the cost of delivering the same, and of delivering the ore they left prepared. That it took 325 days' free labor at $1.00 per day, and 123 quarter days' convict labor at $1.00 per day, and 43 days' hauling ore with four mules, and cost $172.00 ; it was worth that ; one day's hauling with two mules and wagon, 12 cords of wood, $1.00 per cord ; the use of crow-bars, picks, etc.; $120.00 for two months' service of witness, at $60.00 per month— all this was certainly necessary to be done to deliver the ore (an exact copy of questions and answers appears in the motion); and that the court refused to rule out this testimony upon motion of plaintiffs' counsel.

(18.) Because the court failed to give the jury any rule for estimating damages other than that in the charge.

(19.) Because the court failed to instruct the jury as to plaintiffs' rights, growing out of the failure of defendant to receive any ore for 47 days after 1st April, 1881, otherwise than as the charge shows.

(20.) Because the court failed to notice in his charge the claim of plaintiffs, as set out in his declaration for permanent improvements made by plaintiffs, by grading, building roads, etc., on defendant's ore-bed.

· The judge, on hearing the motion, ordered :

"That a new trial be granted in said case, unless defendant's counsel do write off from said verdict the sum of four hundred dollars from the principal sum, the same being allowed for the unroasted ore left by the plaintiffs at the mine, which, if he shall do, a new trial is refused."

Defendant's attorneys wrote off the amount required, and thereupon the plaintiffs excepted.

McCutchen & Shumate; M. R. Stansell, for plaintiffs in error.

I. F. THOMPSON; E. N. BROYLES; UNDERWOOD & ROWELL, for defendant.

JACKSON, Chief Justice.

On a careful examination of this record, we are unable to see clearly that the ends of justice demand a new trial. The parties are at issue on the facts, and the jury and presiding judge having determined them in favor of the defendant, the version given the defendant must be assumed by us as true. That settles the question made in the grounds of the motion in respect to the verdict being contrary to the charge and law and evidence, etc.

The charge sent up in full in the record appears to be a plain, full and complete presentation of the issues before the jury and the law bearing thereon. The errors assigned on portions of it and the refusals to charge other points, read in connection with it, contain no substantial errors which demanded a new trial.

Stress is particularly laid by the very able counsel who argued the case before this court for the plaintiffs in error upon the charge in respect to the waiver of the strict terms of the contract by the conduct of plaintiffs in working under it. The contract, for instance, required scales to be furnished at the point where the iron ore was to be delivered on the railway, and the judge charged, if it was weighed, and fairly weighed at another point, and the plaintiffs acquiesced in it by receiving the weights and the monthly payments which they called for, then, on the principle of waiver, the plaintiffs could not recover, because the scales were not furnished at the place agreed on, but at another place the iron was weighed. Besides, on this matter the court did charge that if damaged by it, plaintiffs could recover; that is, if the weight was incorrect. So, too, the contract required a sufficient number of chutes and screens to enable plaintiffs to furnish fifty tons a day at the road. The judge charged to the effect that if this was acquiesced in for some months, from time to time,

with monthly settlements, the plaintiffs were debarred by this conduct from recovery, unless they notified the defendant that thenceforth they would stand literally on the contract. And the same principle was applied to plaintiffs' conduct in not being prepared each day with that number of tons to be delivered, and the defendant's not being ready to take them every day, that such a departure from the strict terms of the contract, acted on in this way, would forbid recovery for such failure until notice was given that thenceforth plaintiffs would insist on their contract. The point is specially emphasized that the judge charged in effect that mere indefinite complaint would not be sufficient notice, but it must be distinct and emphatic, impressing on the defendant that thenceforth the contract was required to be enforced strictly.

The view this court takes of it is this: When a contract is in writing, each party has a right to expect the other to do precisely what he promises; but if, in the course of the execution of its terms—the carrying them into practical execution in a continuous business—some of those terms are departed from and money is paid and received on that departure for some time, then before the one can recover from the other for failure to pursue the letter of the agreement, he must notify him with clearness of his purpose thenceforth to stand on the original contract. Until such notice, the departure is a sort of new agreement. 2 Wharton on Contracts, p. 870, n.; 2 Camp. R., 530. The rule laid down in the charge of the court applied to the facts before it strikes us as sound sense, and therefore good law.

It is also insisted that the court erred in charging that if the parties abandoned the contract, there could be no recovery by the plaintiffs. The suit is for breach of contract; abandonment by both sides would seem to preclude either from complaining of a breach when both agreed to quit. 54 Am. Dec., 480; 2 Pars. on Cont., 5 ed., 677 to 681.

But it is insisted that there is no evidence to authorize

the charge. It may not be clear that the parties intended to abandon it, but there is perhaps enough to base a charge upon it. If not, it hardly hurt the plaintiff.

The plaintiff in error urges also that the court erred touching the right of plaintiff to recover damage for the second lot of twenty thousand tons which, by the contract, he could elect to furnish. The court charged to the effect that notice that plaintiffs had elected must be given pending the time necessary for them to complete the first 20,-000 tons at 50 tons a day, such being a reasonable time.

Certainly, it seems to us, the other side to the contract ought to have some notice of this election, in order to employ others, if these did not elect; or to prepare to receive the iron if they did. And the reasonable time fixed by the court is the very longest that could be allowed the plaintiffs, to-wit, the whole of the time it would take them by the contract to deliver the first 20,000 tons. Certainly the time allowed could not be complained of by the plaintiffs.

The judge below having given this case a thorough examination, and having granted a new trial, unless the defendant would write off a large part of the verdict which the jury gave it as set-off, and thus having shown the thoroughness of his investigation of the facts, and having approved the verdict with that part written off, and having given, we think, a fair charge, and the plaintiffs in error having shown this court no substantial error of law, our duty is to affirm the judgment. It may be well to add, that in the charge the judge applies the same doctrine of waiver to the defendant in its complaint of bad and unskillful work by the plaintiffs and its effort to recover therefor.

Judgment affirmed.