## SOUTHERN STATES PHOSPHATE AND FERTILIZER
## COMPANY v. BARRETT & DOUGHTY, agents.

The petition in this case was properly dismissed upon general demurrer.

Argued November 29, 1907.—Decided June 9, 1908.

Equitable petition.  Before Judge Hammond.  Richmond superior court.  April 17, 1907.

The Southern States Phosphate and Fertilizer Company brought a petition against Barrett & Doughty, as common agents of the creditors of the firm of Alexander & Alexander, making the following allegations:  The firm of Alexander & Alexander became indebted to the plaintiff on May 24, 1906, in the sum of $11,681.92, as shown by three notes, copies of which were attached to the petition.  These notes were given in pursuance of a written contract for the purchase of fertilizers, shown by a copy attached to the petition, under the terms of which Alexander & Alexander were to hold the fertilizers and all proceeds of sales thereof in trust as the property of plaintiff.  In pursuance of the contract, orders for fertilizers were obtained by Alexander & Alexander from planters, and the names of the purchasers furnished to plaintiff, "together with the amount and the place the fertilizers were to be shipped to; and in pursuance of such orders and directions so given by Alexander & Alexander, plaintiff shipped out the fertilizers direct to said planters or purchasers."  According to the terms of the contract, Alexander & Alexander were to take separate notes from the purchasers of the fertilizers, and all such notes and the proceeds of sales of fertilizers were to be held in trust and turned over to plaintiff as its special property, until the notes of Alexander & Alexander were paid.  In July, 1906, Alexander & Alexander became insolvent, and in August thereafter all the assets of the firm were transferred to Barrett & Doughty as common agents for the creditors, and they were to realize on the same as expeditiously and economically as possible.  In the contract of transfer it was stipulated, "that the funds realized from this administration shall be distributed among the creditors according to any priority they may have under the laws of Georgia, . . and if there should be any difference among the creditors as to the priority of their respective claims, . . nothing in this agreement shall preclude

said creditors from insisting on their respective claims of priority, and if the creditors should finally fail to agree, then any creditor shall have the right to have the matter adjudicated by such legal proceedings as to him may seem most proper in the State court." On August 16, 1906, plaintiff, through its attorney, William H. Fleming, delivered to Barrett & Doughty the following letter: "Messrs. Barrett & Doughty, Augusta, Ga.   Dear Sirs:   As attorney for the Southern States Phosphate & Fertilizer Company, I beg to hand you herewith a list of the notes and accounts taken from the books of Alexander & Alexander, showing the names and residences of purchasers of fertilizers through Alexander & Alexander, together with the date of the note, also date of maturity, also the amount of the note or account, and also the purchase-price of fertilizers entering into each of said notes and accounts.   The fertilizers were sold to Alexander & Alexander under written contract, according to the terms of which all notes, accounts, and cash received for the sale of the fertilizers were to be held in trust by said Alexander & Alexander for the Southern States Phosphate & Fertilizer Company.   The assets of Alexander & Alexander having been delivered over into your hands as common agents of the creditors for collection, etc., this notice is given to inform you that the Southern States Phosphate & Fertilizer Company claims that the purchase-price of fertilizers as contained on said list was to be the property of said company, and held in trust by said Alexander & Alexander, and you are hereby notified and requested to keep separate from other funds all collections you make on account of said sales of fertilizers, and not to mingle the same with other collections from other assets of Alexander & Alexander.   Respectfully, Wm. H. Fleming, Atty. for Southern States Phosphate & Fertilizer Company."   The list of notes and accounts referred to was attached to and delivered with the letter.   It transpired that Alexander & Alexander had not taken separate notes from their customers for the purchase of fertilizers, "but included such purchases along with other advances, in consolidated accounts or in notes signed by their customers, but in every instance the books of Alexander & Alexander showed clearly and distinctly what part of the account or note so taken represented the sales of fertilizers bought from plaintiff," and when the written notice was served on Barrett & Doughty "no collection of any kind whatever had been

made . . on any of the accounts or notes given as aforesaid by
the customers of Alexander & Alexander." "On Dec. 4, 1906,
the books of Barrett & Doughty showed that certain customers of
Alexander & Alexander had paid their indebtedness in full to said
Barrett & Doughty, including full payment of the price of fertili-
zers embraced in the accounts or notes given to . . Alexander
& Alexander. . . The various sums thus paid in settlement for
fertilizers in full amounted to $2,382.49, as shown by list" attached
to the petition. On that date "various persons had paid their in-
debtedness in part; and prorating said partial payments between
the purchase-price of the fertilizers that entered into each account
or note and the other advances making up the balance of each ac-
count or note . . , there results an aggregate of $1,398.06, as
shown by list hereto attached." The total of these two sums is
$3,780.55, and, at a meeting of creditors for the distribution of
the fund arising from the assets of Alexander & Alexander, this
amount was set aside out of the funds in the hands of Barrett &
Doughty, to await the result of this litigation. The contract be-
tween plaintiff and Alexander & Alexander, which is attached to
the petition, "was in no respect altered or changed by any other
writing, or by any other agreement made verbally or otherwise, or
by any act of plaintiff." Upon these allegations the plaintiff
prayed, "that it be decreed to have a prior claim upon said $3,-
780.55, . . and that Barrett & Doughty be directed to pay over
said sum to plaintiff, together with any interest that may have ac-
crued thereon;" and that the court grant such other relief as equity
might require. By an amendment to the petition it was alleged
that "all sales of fertilizers were made by Alexander & Alexander
prior to May 24, 1906, the date of their notes to plaintiff."

The contract set forth by the petition was, so far as the pro-
visions thereof are of consequence in this case, as follows:

"Augusta, Ga., Dec. 6th, 1905. Messrs. Alexander & Alexander,
Augusta, Ga. The Southern States Phosphate & Fertilizer Com-
pany hereby agrees to deliver fertilizers to you F. O. B. cars at
. . . . . . . . . . . . . . . . . . . . .on. . . . . . . . . . . . . . . .R. R., upon terms and
conditions as follows: . . (2) For cash purchases payment is to
be made. . . . . . . . . . . . . . .For fertilizers delivered to you other-
wise than as cash purchases, your notes dated May 1st next, with
usual waivers and conditions, are to be given as evidence of your

indebtedness, payable at .N. Y. Bank . . . . maturing as follows: Nov. 1-15,—Dec. 1. All fertilizers shipped under this contract are to be held by you as agent and in trust as the property of this company, until the same are sold by you and settled for in cash or until your note therefor is signed and delivered to the company. (3) When any fertilizers shipped under this contract are sold by you to others, all proceeds of such sales, whether money, checks, drafts, notes, liens, accounts, or other evidences or statements of indebtedness, given by any purchaser for fertilizers so sold by you, are to be received by you in trust, as the special property of the company as long as any part of your indebtedness to the same remains unpaid, and are to be delivered at any time upon demand of the company. All notes for fertilizers sold by you are to be made payable to this company, and are to be taken on forms furnished by it. (4) All cash payments made to you by purchasers, whether made at the time of sale or afterwards, are to be promptly remitted by you to the company as long as you have any indebtedness to the company, whether the said indebtedness be matured or not, and upon all remittances made before the maturity of your indebtedness you are to be credited with interest at 7 per cent. per annum, from the date they are received by the company, up to the date of maturity of your own indebtedness." The. contract was signed by the parties thereto, the signature "Alexander & Alexander" being written under the words, "Accepted Dec. 14, 1905."

A general demurrer was sustained, and the plaintiff excepted.

*William H. Fleming,* for plaintiff.

*Joseph B. & Bryan Cumming,* for defendants.

Fish, C. J. (After stating the facts.)

In our opinion, the rights of the plaintiff in this case are not to be determined by the alleged trust provisions upon which it relies, contained in the written contract which it made with Alexander & Alexander, set forth by the petition. We think that the petition shows that in the dealings between the plaintiff and Alexander & Alexander, wherein the indebtedness of the latter to the former arose, the alleged trust feature of this contract was abandoned. This contract clearly contemplated an actual delivery of fertilizers by the plaintiff to Alexander & Alexander, and not a mere constructive delivery to them by actually delivering the goods to their .

customers, to whom they had previously sold the same. It provided that the fertilizer company would deliver fertilizers to Alexander & Alexander, "F. O. B. cars," and that *"all fertilizers shipped under this contract"* should be held by Alexander & Alexander as agent and in trust for the company, until sold for cash, or Alexander & Alexander gave their note for the same. Until one or the other of these events occurred, Alexander & Alexander were to hold the fertilizers in trust for the plaintiff. They could not sell any of the fertilizers on credit, until they gave their note for the same to the plaintiff, when the trust in the fertilizers would terminate. This construction is placed upon the contract in a brief filed for plaintiff in error by one of its counsel, wherein it is said: "The contract first provides that Alexander & Alexander should give their notes for all fertilizers, not delivered as cash purchases, and, secondly, that the title shall be reserved in plaintiff until sales by Alexander & Alexander for cash, or until notes are given. Thus Alexander & Alexander could not resell, except for cash, until they gave their notes. This partial reservation of title and prohibition upon selling was intended to protect plaintiff in the interval between the delivery of the goods and the receipt of Alexander & Alexander's notes. After that time Alexander & Alexander might sell; and plaintiff is then protected by clause 3, providing that all proceeds of fertilizers, whether represented by money or evidences of debt, were to be held in trust until Alexander & Alexander's debt was paid." The dealings of the parties to this contract were not in accordance with its terms. As a matter of fact, none of the fertilizer was actually delivered by the plaintiff to Alexander & Alexander, but all the goods were shipped by plaintiff direct to persons to whom Alexander & Alexander had sold the same upon credit, while they were in the plaintiff's own possession. It is obvious that under this course of dealing it was impossible for Alexander & Alexander to hold any of the fertilizers in trust for the plaintiff, for they never for a single moment had possession of the same. When the plaintiff parted with its possession of the goods, the possession passed from it to the persons to whom it, upon the orders of Alexander & Alexander, shipped them. Delivery by the plaintiff to the railroad company was delivery to the consignee, and both possession and title passed to him. Again, as counsel for the plaintiff in error says, under the contract, Alexander & Alexander

48

were prohibited from selling any fertilizers upon credit until they had given their note for the same to the plaintiff; and yet they actually sold all of the goods upon credit before they gave their notes to the plaintiff. The plaintiff must have known that they were so selling the goods, as it received no remittance of cash from Alexander & Alexander, who were required by the contract to promptly remit to the plaintiff all cash received from sales of the fertilizers; and yet the plaintiff, without requiring Alexander & Alexander to pay for the fertilizers, or to give their notes therefor, shipped the goods, from time to time, to the persons to whom Alexander & Alexander had sold them upon credit.

The fertilizer company relies upon the third clause of the contract to support its contention that the notes and accounts in which the price of fertilizers sold by Alexander & Alexander to their customers was included were, to the extent that such price was embraced therein, held in trust for it. This clause provides that, "when any fertilizers shipped under this contract are sold by you to others, all proceeds of such sales, whether money, checks," etc., "are to be received by you in trust, as the special property of the company," etc. This can not be held to refer to credit sales of fertilizers, to be made by Alexander & Alexander before they gave their notes to plaintiff for the purchase-price of the same, for if it were given such a construction, it would be in direct conflict with the second clause, which, as we have seen, prohibited them from selling any of the fertilizers upon credit before giving their notes therefor to the plaintiff. In the brief from which we have quoted, counsel construe this third clause as applying to such sales made after Alexander & Alexander gave their notes to the plaintiff. By its terms this clause applies only to fertilizers shipped under this contract, and, in our opinion, the plaintiff's petition shows that no fertilizers were shipped *under this contract*. Under the contract, the fertilizers were to be delivered to Alexander & Alexander, free on board cars, to be held by them in trust for the plaintiff until they either sold them for cash, in which case they were to immediately remit the cash received to plaintiff, or until they gave their notes for the same to the plaintiff. In order for fertilizers, sold by the plaintiff to Alexander & Alexander upon credit, to be shipped under this contract, they had to be so shipped that they could be held by Alexander & Alexander until one or the

other of these things occurred; that is, they had to be shipped to Alexander & Alexander, or to some agent of theirs. Fertilizers so sold by the plaintiff, shipped not to Alexander & Alexander, but direct to persons to whom they had already sold the same upon credit, were not shipped under this contract. The contract did not cover such a shipment or delivery of fertilizers, sold upon credit to Alexander & Alexander. Alexander & Alexander could not, without first paying for the fertilizers, have demanded that they be so shipped, and the plaintiff could have refused to thus ship them. When they were shipped in this way by the plaintiff, at the request of Alexander & Alexander, the shipments were contrary to the contract, and its trust feature was abandoned.

Another thing which seems to clearly indicate that the trust idea was abandoned by the parties is, that this third clause of the contract required that all notes for sales of fertilizers taken by Alexander & Alexander should be made payable to the fertilizer company and filled out on forms furnished by it, and yet not one of such notes was made payable to the plaintiff, and each of them included indebtedness of the maker to Alexander & Alexander other than for the purchase of fertilizers; and the petition does not even allege that the plaintiff furnished to Alexander & Alexander any forms upon which to take notes for the price of fertilizers sold to their customers. It hardly seems possible, and it is not alleged, that the plaintiff, while it was from time to time shipping the goods to the customers of Alexander & Alexander, did not know that they were not complying with this provision of the contract; for it appears, from exhibits attached to the petition, that, upon the orders of Alexander & Alexander, shipments were made by the plaintiff to over one hundred different persons, to whom Alexander & Alexander had sold fertilizers upon credit. For these reasons, we are of opinion that the plaintiff could not in the present case claim any benefit under the trust feature of the written contract which it made with Alexander & Alexander, and that none of the notes or accounts referred to in the petition, held by Alexander & Alexander against their customers, were impressed with a trust in favor of the plaintiff. The demurrer was properly sustained, and the judgment is, therefore,

*Affirmed. All the Justices concur.*