Holden, J.
(After stating the foregoing facts.) Miles & Company brought suit against the Kennesaw Guano Company to recover the purchase-price of a quanity of tankage delivered to the defendant. The defendant filed an answer, setting up a failure on the part of the plaintiff to deliver the quantity of tankage guaranteed under a written contract between the parties (a copy of which appears in the statement of facts), whereby it was damaged in the amount of difference between the contract price and the market value of the deficiency in the amount delivered; and praying judgment accordingly. The court, to whom the ease was submitted without a jury, rendered judgment in favor of the plaintiffs for the full amount sued for, and to this judgment the defendant excepted. In the judgment the court said: “The court is further of the opinion that the evidence discloses a mutual departure from the exact terms of the written contract by the paying and receiving money thereunder by the parties thereto, which constituted a quasi new contract.” The original written contract between the parties, among other things, provided: “Said Miles & Co. are to pay for the use of said premises 4.00 per month, and in addition thereto said Company is to have the option of buying at 8.00 per ton, when dry, all the by-product called tankage obtained in rendering tallow, which is guaranteed to be not less than ten tons per month.” The plaintiffs delivered to the defendant all of the tankage they made, which was less than the 10 tons per month guaranteed under the contract. The plaintiffs contend that the various settlements made between them and the defendant, and the payment by the defendant to the plaintiffs for the tankage delivered, which was less than the 10 tons per month guaranteed, and other conduct of the defendant, shows that there was a mutual departure from the terms of <the original contract and a quasi new contract between the parties made, which relieved the defendant of the necessity of fulfilling the guarantee in the original contract of furnishing 10 tons per month. The Civil Code, §3642, provides: “Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, *769 before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement.” The original contract began May 1, 1898. The plaintiffs did not vacate the defendant’s premises and cease to operate its plant in the making of tankage until October 1, 1901. The plaintiffs furnished to the defendant all of the tankage they made. During these several years the defendant paid to the plaintiffs, two or three times’ each year, the amount due for tankage furnished by the plaintiffs to the defendant, as per statements rendered. According to the testimony of witnesses for the plaintiffs; nothing whatever was said, when these various settlements were made, about the failure of the plaintiffs to furnish 10 tons per month, as provided by the contract, or at any other time until about the time this suit was filed to recover for the last deliveries of tankage made by the plaintiffs to the defendant. This suit was filed June 7, 1902. These various' settlements were made each year, and some of them occurred under the renewed and some under the* original contract, and when they were made the guano company took from the value of the tankage delivered, computed at the contract price, the amount due by Miles & Company for rent and steam, and paid Miles & Company the’ difference. The tankage delivered was all Miles & Company made, and these settlements were made without the guano company making any complaint whatever that the guarantee provided for in the contract was not fulfilled, or that the ¿mount delivered did not fulfill the guarantee provided for in the contract.' While Miles & Company delivered all the tankage they made, they did not deliver the amount called for by the guarantee; and if Miles & Company, on account of any deficiency in the amount of tankage delivered, owed the guano company the difference in the market price and the contract price of such deficiency at the time these various settlements were made, then the guano company at such times did not owe-Miles & Company anything, as the' difference between the contract price and the market price of such deficiency would have been more, at the date of the respective settlements, than the amount due Miles & Company by the guano company as the contract price of the tankage delivered, less the amount due by-Miles & Company for rent and' steam. The record does not show' *770 anything to indicate other than that both parties, at the time the various settlements were made, considered them as being an adjustment of all differences then existing between them. The contract imposed upon the parties thereto mutual obligations, requiring the guano company to furnish steam and a location for Miles & Company’s plant, and on Miles & Company the obligation to pay rent and for the steam furnished, in addition to giving the guano company the option to buy tankage. In the execution of this contract, Miles & Company delivered to the guano company all the tankage they made, and the guano company received the same as it was delivered and paid therefor, after deducting the amount due by Miles & Company for rent and steam. We think that under the facts appearing in the record the court was not required, but was authorized, to find that in the course of the execution of the contract the parties departed from its terms, and paid and received money under such departure, as a result of which the plaintiffs were relieved of the duty to fulfill the guarantee provided for in the original written contract. In this connection, see Civil Code, §§3642, 3674, 5152; Eaves v. Cherokee Iron Co., 73 Ga. 459; Hasbrouck v. Bondurant, 127 Ga. 220 (56 S. E. 241); Provident Savings Life Assurance Society v. Georgia Industrial Co., 124 Ga. 399, 407 (52 S. E 289); Southern States Phosphate &c. Co. v. Barrett, 130 Ga. 749 (61 S. E. 731); Mathis v. Harrell, 1 Ga. App. 358, 362 (58 S. E. 207); Bush v. West Yellow Pine Co., 2 Ga. App. 295 (58 S. E. 529); Fitzgerald Cotton Oil Co. v. Farmers Supply Co., 3 Ga. App. 212, 216 (59 S. E. 713).
The original contract ended May 1, 1899.' It was renewed by an agreement indorsed on it by both parties, to the effect that it was extended to May 1, 1900. The president of the defendant company testified: “As to what was done at the expiration of the. second term of this contract, which was May 1st, 1900, there wasn’t anything. I can’t recall that anything at all was said about it. Edward O. Miles & Company did not remove their plant from the premises, but they continued there just as they had been doing, operating the plant, rendering tallow and making tankage. The tankage that was made was delivered to us at stated times; that is, at irregular times as they had accumulated enough to make a ‘weighing,’ as. we called it. It was delivered to us when that had been done. There was no difference in the character of the busi *771 ness conducted by Miles & Company on the premises after May, 1900, and that conducted before that time.” We think that the conduct of the parties, after the expiration of the contract made in writing, was such as to renew such contract as it previously existed, and each of the parties was bound by the terms of such previously existing contract as modified by the mutual departure therefrom. In this connection, see Hill v. Goolsby, 41 Ga. 289, 291; Roberson v. Simons, 109 Ga. 360 (34 S. E. 604).
The defendant alleged in its plea that the premises were worth more for rent than the amount provided for in the contract, and offered the following amendment: “Defendant says that in the event it should be held by the court that the written contract between plaintiff and defendant was not extended as contended by defendant from May 1st, 1900, to October 1st, 1901, by mutual consent, and by the continued use and occupation of defendant’s premises by plaintiff, that the defendant says that for the use and occupation uf its premises from May 1st, 1900, to October 1st, 1901, plaintiff became indebted to defendant for the reasonable rental value of the premises, which defendant says was the sum of $50.00 per month.” In view of the ruling above made, the court committed no error in refusing to allow such amendment.

Judgment affirmed.

All the Justices concur.