CHATHAM MANUFACTURING COMPANY *vs.* AVERY CHEMICAL COMPANY.

Suffolk. January 13, 1920. — March 30, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Contract,* Construction. *Option.*

If, in a contract in writing for the sale of a certain quantity of merchandise, the seller is given the option of increasing the quantity of the merchandise to be sold by a certain amount but the contract does not specify a time within which the option shall be exercised, the buyer will not be bound by an exercise of the option which does not occur within a reasonable time.

A contract in writing for the sale of five hundred barrels of pyroligneous acid gave the seller an option to increase the number of barrels to twenty-five hundred barrels, but stated no time within which the option should be exercised. The contract was made on January 17, 1918. The acid was for use in dyeing khaki cloth for the use of the national government in the World War, and this was known to the seller. The seller's average weekly output was seventy-five barrels. *Held,* that an exercise of the option by the seller on August 15, 1918, would not be given within a reasonable time.

On May 23, following the making of the contract in writing above described, the seller had not yet delivered any of the acid and gave notice to the buyer that he was "about ready to ship . . . but owing to the big delay considered it advisable and only just to you to first place the facts and circumstances before you." The buyer replied on May 29 that he "would be pleased to receive the Pyro Acid, which we purchased from you on contract." *Held,* that the above letters contained no extension of the time within which the seller must exercise the option of increasing the amount of acid to be shipped.

In the circumstances above described, the buyer on August 8, 1918, wrote to the seller asking him to "discontinue shipments of Pyro Acid Water until further notice." At that time one hundred and twenty-five barrels had been delivered and paid for. At the hearing by a judge without a jury of an action by the seller against the buyer for damages resulting from the plaintiff being prevented from delivering and receiving pay for twenty-three hundred and seventy-five barrels, the plaintiff asked for a ruling that the time within which he could exercise his option to increase the amount to be delivered to twenty-five hundred barrels was extended by the letter of August 8 and subsequent correspondence. The judge gave the ruling with the qualification that the extension was

for a reasonable time thereafter. *Held*, without intimating that the letter of August 8 did so extend the time for the exercise of the option, that the plaintiff had no reason for complaining of the giving of the qualified ruling.

On August 15, under the circumstances above described, the plaintiff wrote to the defendant and, after referring to the cause of delay and the correspondence with the defendant, and to the contract as one for three thousand barrels, stated, "We . . . took the matter up with you about June 1st when you stated we could go on and ship. We therefore naturally concluded that the contract was reinstated and that we would be able to ship the above quantity." *Held*, that the letter was not an exercise of the option given to the plaintiff in the contract.

An exercise of the option above described in a letter of November 20, 1918, was *held* not to have been within a reasonable time after August 8.

CONTRACT for breach of an agreement in writing for the manufacture by the plaintiff and sale to the defendant of pyroligneous acid. Writ dated February 5, 1919.

In the Superior Court the action was heard by *Jenney*, J., without a jury.

The agreement in writing, signed by the defendant by its vice president, Allen O. Claflin, read as follows:

"January 17th, 1918.

"The Avery Chemical Co. hereby agrees to buy and the Chatham Mfg. Co. hereby agrees to sell, 500 bbls of their Pyro acid on a basis of 5c per gal for 5% acid bbls to be charged extra at price paid therefor. This price is f.o.b. Savannah steamers and goods to be paid for on the 5th of each succeeding month for goods received in preceding month and on the 25th of the succeeding month for goods shipped in the preceding month but not received before the 5th. At the option of the Chatham Mfg. Co. the amount of acid to be delivered may be increased to 2500 bbls. It is understood that acid will not be shipped that averages much under 4½%. Shipments to begin as soon as possible."

On August 8, 1918, the defendant wrote to the plaintiff the following letter: "We would ask that you kindly discontinue shipments of Pyro Acid Water until further notice." To this the plaintiff replied as follows: "We have your favor of the 8th this morning asking us to discontinue shipments of Pyro Acid until further notice. This is quite a shock to us as we have gone to considerable trouble and expense and in getting up this water. We have wired you stating that we had 50 bbls already for ship-

ment and freight room engaged therefor this week's steamer and asking if we could not send this on, also asked you to state about when we could resume shipments. We hope to hear from you by wire during the day, and sincerely trust this stoppage of shipments is but temporary."

On August 13, the defendant telegraphed to the plaintiff as follows: "Impossible for us to accept Pyro Acid at this time." To this the plaintiff replied by telegram on August 14 as follows: "Telegram recd would you recommend our selecting and storing pyro acid in anticipation shipment being resumed shortly if not could you suggest any one else using it please wire reply our expense." The defendant on the same day telegraphed to the plaintiff as follows: "You may ship us fifty barrels you have ready on a sixty day billing basis would not recommend your storing pyroacid but regret cannot advise of other interested parties. Charge.

Avery Chemical Company."

On August 15, the plaintiff wrote to the defendant the following letter:

"We confirm various telegrams exchanged and thank you for letting us ship the 50 bbls we have made up of Pyro Acid. We understand that we can draw for the value of the bbls at sight and that the balance is to be remitted in 60 days.

"We are naturally considerably upset at the discontinuance of the shipments of the Pyro Acid water and wonder if you would be willing to give some information as to the cause. We have worked hard in getting our plant in condition to supply this and it is unfortunate that just as we get in shape, the shipments are discontinued by you. The situation is that Mr. Claflin left a contract with us when here of about 3000 bbls of this water. We were delayed in shipping any and took the matter up with you about June 1st when you stated we could go on and ship. We therefore naturally concluded that the contract was reinstated and that we would be able to ship the above quantity. It seems strange that in the short time between this reinstatement of contract and your telegram to cease shipments, the situation could change so radically. If it is a question of time in paying for this water we would be glad to meet you in the matter provided we can

continue to draw for the value of the bbls. We supposed that at this time there was a particularly good demand for iron liquor. Is this correct?

"By the way, we sent you a sample of iron liquor we made up and asked if you would be willing to tell us whether it was all right or not. If it is all right we might go on and make it and probably dispose of it throughout the South, thus not coming in competition with you.

"We would greatly appreciate a full letter from you in the matter if you can consistently give it to us."

Other material evidence is described in the opinion. At the close of the evidence, the plaintiff asked for and the trial judge refused the following rulings:

"1. Upon all the evidence the plaintiff is entitled to recover for damages for failure of the defendant to accept deliveries of twenty-five hundred barrels."

"4. The plaintiff had the right to increase the amount of deliveries to twenty-five hundred barrels up to the time which the court finds it was required to complete deliveries of the five hundred barrels."

The plaintiff also asked for the following rulings:

"6. The time within which the plaintiff could elect to increase the deliveries under the contract to twenty-five hundred barrels was likewise continued and extended by the defendant's letter of August 8, 1918, and its subsequent correspondence.

"7. The plaintiff's letters of August 15, 1918, November 20, 1918, and November 23, 1918, constitute an election by the plaintiff to increase the deliveries under the contract to twenty-five hundred barrels."

The judge made the sixth ruling with the addition that the extension was for a reasonable time thereafter. The seventh ruling the judge held to be immaterial because he found that the option, if exercised, was not exercised within a reasonable time, if the question of reasonable time was one of fact, and ruled that it was not exercised within a reasonable time, if it was a question of law.

The judge found for the plaintiff in the sum of $863.34; and the plaintiff alleged exceptions which, after the qualification of *Jenney, J.*, as a justice of the Supreme Judicial Court, were allowed by *Lawton, J.*

*E. E. Gordon*, for the plaintiff.

*S. R. Miller*, for the defendant.

CARROLL, J.  By a written contract dated January 17, 1918, the defendant agreed to buy and the plaintiff to sell five hundred barrels of pyroligneous acid at five cents per gallon; at the plaintiff's option, the amount could be increased to twenty-five hundred barrels, "Shipments to begin as soon as possible." This acid was a bi-product from the distillation of soft pine lumber, and formerly was a waste product; but at the time of the contract it was in demand for the making of iron liquor, used in the dyeing and coloring of khaki cloth for the government. This was known to the plaintiff. In the summer of 1918 the demand ceased, and from that time the acid was unsalable and had no market value. The plaintiff's average weekly output, at a cost to it of one half cent a gallon, was seventy-five barrels, each barrel containing about fifty gallons.

None of the acid was shipped to the defendant until the last of July or early in August, when fifty barrels were delivered; and before August 20 a total of one hundred and twenty-five barrels had been delivered and paid for by the defendant. Several letters passed between the parties and on November 23 the defendant notified the plaintiff to ship no more of the acid on its account. The defendant conceded its liability for failure to accept three hundred and seventy-five barrels, and damages at four and one half cents a gallon, amounting to $863.34, were assessed against it. The plaintiff sought to recover damages for the failure to accept the additional twenty hundred barrels which, under the seller's option, it had the right to deliver. The principal question involved is the ruling of the presiding judge that the option, if exercised, was not exercised within a reasonable time.

No time was limited for carrying the option into effect, and in order to bind the defendant it was essential that it should have been acted upon within a reasonable time. On August 8, the defendant notified the plaintiff to discontinue shipments until further notice. On August 14, it requested the shipment of fifty barrels; on the next day (August 15) the plaintiff wrote the letter quoted in full on pages 342, 343, and on November 23, a letter saying that it expected the defendant to take twenty-eight hun-

dred and fifty barrels of Pyro Acid. All the facts are shown, and it is a question of law, what was a reasonable time for the exercise of the option. *Loring* v. *Boston,* 7 Met. 409, 413. *Park* v. *Whitney,* 148 Mass. 278. *Lewis* v. *Worrell,* 185 Mass. 572, 575. *New England Box Co.* v. *Prentiss,* 75 N. H. 246. *Fitzpatrick* v. *Woodruff,* 96 N. Y. 561, 565. *Eaves & Collins* v. *Cherokee Iron Co.* 73 Ga. 459.

Considering all the circumstances disclosed, in our opinion the option was not exercised within a reasonable time. When the contract was made, our country was engaged in the World War; and the demand for the plaintiff's waste product arose solely from the fact that it was of value in dyeing and coloring the clothing of soldiers. When that demand was supplied, the acid contracted for ceased to be salable and had no market value. The plaintiff knew this. It must also have known that the time for the fulfilment of the contract was important and of its very essence. The plaintiff could produce seventy-five barrels each week, and in the ordinary course of its business it was to be expected that the five hundred barrels contracted for would be ready for delivery before April 1. No notice was then given that it intended to rely on the option; and there was no intimation that it intended to exercise the option until months after the contract was signed. The option could not remain open indefinitely and the plaintiff understood that the contract was executed because of the important crisis then existing. Even if the letter of August 15 were a sufficient notice of the plaintiff's intention to fulfil the option, and assuming that the defendant's letter of August 8 did not extend the time for the exercise of the option, this notice was not given within a reasonable time and it could not bind the defendant to accept deliveries.

On May 23 the plaintiff wrote explaining the delay and stating that it was "about ready to ship water, but owing to the big delay considered it advisable and only just to you to first place the facts and circumstances before you;" to which the defendant answered May 29, saying, "we would be pleased to receive the Pyro Acid, which we purchased from you on contract." Although the defendant admitted that the time for delivery of the five hundred barrels called for in the contract was extended by agreement beyond the reasonable time required by law, as we construe

the defendant's letter of May 29, this extension of time related solely to the five hundred barrels called for in the written contract and did not extend the time for the exercise of the option. The defendant's letter made no reference to the additional quantity to be supplied at the seller's option and the plaintiff did not refer to the option until August 15. See *Eaves & Collins* v. *Cherokee Iron Co. supra.* The trial judge, therefore, correctly ruled that upon all the evidence the plaintiff was not entitled to recover for the defendant's failure to accept deliveries of twenty-five hundred barrels.

The plaintiff asked for a ruling, "The time within which the plaintiff could elect to increase the deliveries under the contract to twenty-five hundred (2500) barrels was likewise continued and extended by the defendant's letter of August 8, 1918, and its subsequent correspondence." The judge so ruled with the qualification that the extension was for a reasonable time thereafter. The letter of August 8 asked the plaintiff to "discontinue shipments of Pyro Acid Water until further notice." Without intimating that the letter of August 8 extended the time for the performance of the option, it is enough to say that the plaintiff cannot complain of this ruling, with the qualification. It was as favorable as it could ask.

The plaintiff asked the judge to rule that "the plaintiff's letters of August 15, 1918, November 20, 1918, and November 23, 1918, constitute an election by the plaintiff to increase the deliveries under the contract to twenty-five hundred (2500) barrels." On this question the judge ruled that the request was immaterial, because he found that the option, if exercised, was not exercised within a reasonable time. He previously had ruled in effect that the plaintiff had a reasonable time after the defendant's letter of August 8 to elect to deliver twenty-five hundred barrels.

In the letter of August 15, when one hundred and twenty-five barrels had been shipped, the plaintiff, after referring to the cause of delay and its correspondence with the defendant, and to the contract as one for thirty hundred barrels instead of twenty-five hundred barrels, stated, "We . . . took the matter up with you about June 1st when you stated we could go on and ship. We therefore naturally concluded that the contract was reinstated and that we would be able to ship the above quantity."

This letter is relied on by the plaintiff as a notice of the exercise of the option. We do not think that this is its true meaning; it is not an unqualified notice that the plaintiff then intended to rely on the option and fulfil its conditions, but is a statement of what it concluded from the correspondence and that it would be able to ship; nor does it clearly state that it intended to carry out the option and hold the defendant to the agreement, and was then ready to make shipments. Even if it could be construed as fairly indicating the intent to make the shipments it manifested an intention to deliver thirty hundred barrels. This was not according to the terms of the agreement. The defendant had made no contract for this quantity. The most that the plaintiff could furnish under the contract and option was twenty-five hundred barrels. The letter, even if it be construed as a notice that the plaintiff intended to fulfil the contract as he understood its terms, was not a sufficient notice to fulfil the option contained in the contract and the notice given did not hold the defendant. *Metropolitan Coal Co.* v. *Boutelle Transportation & Towing Co.* 185 Mass. 391, 396.

The plaintiff wrote to the defendant on August 23, September 7 and September 21, but in none of these letters is there any indication that it intended to rely upon the option and expected the defendant to accept what remained of the twenty-five hundred barrels. In the letter of November 20, the plaintiff wrote: "We still owe you 2850 bbls;" and on November 23, after receiving the telegram with instructions not to manufacture or ship any more acid, on the same day, wrote, "we owe you 2850 bbls of Pyro Acid and naturally expect you to take same." Even if these letters of November 20 and 23 signify a definite purpose to carry out the option and apart from the error in the amount to be shipped, considering the peculiar nature of the contract, the special use to which the material was to be applied, the importance of time and the plaintiff's knowledge, this notice was not given within a reasonable time. The armistice had then been declared, hostilities had ceased and the plaintiff knew that there was no further demand for its product.

*Exceptions overruled.*