CHARLES S. STUART *vs.* JOSEPH NEWMAN.

Suffolk.    December 9, 1921. — March 3, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Broker*, Commission. *Agency*, Existence of relation, Termination of relation, Agent's compensation.

At the trial of an action for a commission for procuring a purchaser of a lease of a garage, there was evidence tending to show that the plaintiff was employed by the defendant generally to find a customer ready, able and willing to buy the lease and that, if he was successful in making a sale satisfactory to the defendant, he was to have a certain commission; that, in response to an advertisement by the plaintiff, a customer offered $4,500 on a July 27, which the defendant declined, saying that the "plaintiff must get $500 more;" that the plaintiff then said to the defendant that his customer wanted the property and would "pay $500 more," to which the defendant replied, that, if the customer "would pay $500 more he would hold it open for two or three days;" that the plaintiff's customer already had deposited $500 with the plaintiff and on July 29 agreed to pay $5,000 for the property, and was ready, able and willing to do so, which facts the plaintiff telephoned to the defendant the next morning, when he was informed that he was "too late;" that it later appeared that the defendant had agreed to sell the property to another, and that the defendant attempted unsuccessfully to avoid the sale to the second customer. *Held,* that

(1) It was proper to refuse to order a verdict for the defendant;

(2) It was proper to refuse to rule that "If the defendant, prior to the plaintiff's putting the prospective purchaser and the defendant into communication with one another, in good faith sold the business to another customer, the plaintiff is not entitled to recover;"

(3) It was proper to refuse to rule that "In order for the plaintiff to recover, the burden is upon him to prove that he obtained a customer who was ready, able and willing to meet the terms offered by the defendant prior to the sale of the business to another;"

(4) It was proper to refuse to rule that "One, giving a broker authority to sell his property upon terms stated, but not expressly agreeing that such broker shall have the exclusive right to sell, retains the right to effect the sale personally or through another broker, and the owner may enter into an agreement to sell which will be effectual at any time before he has actual notice that an agreement has been effected by the broker;"

(5) A finding was warranted that the plaintiff, ignorant of the defendant's transaction with the second customer, was not discharged until after he had consummated the sale to his customer, in which circumstances the defendant's voluntary disability of performance, either before or after he might have been found unreservedly and expressly to have authorized the sale to a customer procured by the plaintiff, could not defeat the plaintiff's right to a commission.

CONTRACT for $500, a commission alleged to have been. earned by procuring a customer ready, able and willing to purchase the defendant's garage at 40 Aspinwall Avenue in Brookline. Writ dated August 7, 1919.

In the Superior Court, the action was tried before *Fox*, J. Material evidence, rulings requested and refused, and instructions given are described in the opinion. The jury found for the plaintiff in the sum of $500; and the defendant alleged exceptions.

*W. P. Murray*, (*S. B. Stein* with him,) for the defendant.

*J. M. Graham*, for the plaintiff.

BRALEY, J. The plaintiff was generally employed to find a customer ready, able and willing to buy the defendant's lease of a garage, and if he succeeded in making a sale satisfactory to the seller his commission was to be ten per cent of the purchase price. The essential evidence of the parties covering their subsequent dealings is irreconcilable. But the jury who were to determine the facts could find on the plaintiff's testimony, that in response to his advertisement one Ehrlich offered $4,500 on July 27, 1919, which the defendant upon notice of the offer declined, "saying plaintiff must get $500 more," and the plaintiff having replied, "Well, this man wants it, he will pay $500 more," the defendant said, "if this man would pay $500 more he would hold it open for two or three days." The plaintiff had already received a deposit of $500 from Ehrlich, who finally agreed on July 29, 1919, to pay $5,000 for the property. During

the forenoon of the next day the plaintiff telephoned the defend-
ant,"that he had sold the place for $5,000." The defendant
exclaimed,"Have you really sold the place?" The plaintiff said,
"Yes, we have sold it and the man has signed an agreement
agreeing to pay $5,000 and I got a $500 deposit." The defend-
ant answered, "I am afraid you are too late but I will be up to
see you about four o'clock," when it appeared that he had "signed
an agreement with another man to take this garage." The de-
fendant thereupon consulted counsel and endeavored to have
the sale he claimed to have made to one Bell for $4,000 abrogated,
but his efforts having proved unavailing he declined to pay the
plaintiff a commission, on the ground, that the plaintiff's agency
was not exclusive and no commission had been earned. It further
could be found that Ehrlich was not only ready and willing, but
able to buy, and had agreed to purchase at the price named by
the defendant. *Brilliant* v. *Samelas*, 221 Mass. 302, 303.

The presiding judge, because of this aspect of the evidence,
rightly declined to órder a verdict for the defendant, or to rule
except so far as covered by the instructions, that "If the defend-
ant, prior to the plaintiff's putting the prospective purchaser
and the defendant into communication with one another, in good
faith sold the business to another customer, the plaintiff is not
entitled to recover," or that "In order for the plaintiff to recover
the burden is upon him to prove that he obtained a customer
who was ready, able and willing to meet the terms offered by
the defendant prior to the sale of the business to another," or,
that "One giving a broker authority to sell his property upon
terms stated, but not expressly agreeing that such broker shall
have the exclusive right to sell retains the right to effect the sale
personally or through another broker, and the owner may enter
into an agreement to sell which will be effectual at any time
before he has actual notice that an agreement has been effected
by the broker." The employment could have been terminated
by the defendant withdrawing the property when he was informed
of Ehrlich's offer of $4,500, or as the judge told the jury, it could
have been revoked by a statement by the defendant that he pro-
posed to sell "to somebody else tomorrow." *Cadigan* v. *Crabtree*,
186 Mass. 7, 12. *Kimball* v. *Hayes*, 199 Mass. 516, 520. The
negotiations, if any, which led to the sale by the defendant were

culminated on his evidence July 28. But if the jury believed the evidence of the owner of the estate where the garage was located, she negotiated the sale to Bell, "The matter was settled around the last of July." The plaintiff who was ignorant of these transactions was not discharged however until after the sale to Ehrlich had been consummated. It is settled that under such conditions the defendant's voluntary disability of performance either before or after he had unreservedly and expressly authorized the sale to a customer procured by the plaintiff cannot defeat the plaintiff's right of recovery. *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 478, 479. *Carnes* v. *Howard,* 180 Mass. 569. *Brilliant* v. *Samelas,* 221 Mass. 302, 303. *Wheeler* v. *Lawler,* 222 Mass. 210. *Zilli* v. *Rome,* 240 Mass. 368. *Munroe* v. *Taylor,* 191 Mass. 483, relied on by the defendant is on the present record plainly distinguishable.

The instructions in so far as excepted to disclose no error of law for reasons already stated, and the exceptions to the admission of evidence not having been argued must be treated as waived.

*Exceptions overruled.*