Thomas W. Rich *vs.* Johan Behrn.

Essex. March 4, 1924. — April 8, 1924.

Present: Rugg, C.J., Braley, DeCourcy, Crosby, & Carroll, JJ.

*Broker,* Commission. *Contract,* Performance and breach.

At the trial of an action by a resident of the United States against a resident of Sweden for a commission alleged to have been earned by procuring a sale of leather of the defendant to a certain corporation in Pennsylvania, the plaintiff depended upon an agreement in a letter reading as follows: " In case you can place any of the goods at a price that I find acceptable I shall be willing to let you have a commission of two per cent. of the goods sold." It appeared that the leather at the time

of the sale already was in the possession of the corporation, by which it was held subject to the defendant's order after he had purchased it from the corporation. The plaintiff did not, and on the evidence could not, contend that he was entitled to a commission for having introduced the corporation to the defendant as a possible customer. His contention was that " it was a result of the plaintiff's activity, intervention, and interviews with the purchaser and his letter or letters to it " that the sale finally was consummated at a price satisfactory to the defendant. Upon the evidence it was *held*, that

(1) Certain agents acting on behalf of the purchaser corporation who were instrumental in bringing about the purchase, either never heard of the plaintiff as a party concerned in the making of any sale to it or else wholly ignored him except as the possibility of his effecting a sale to some one else may have urged them to close the contract which they had been negotiating with the defendant long before the plaintiff became in any way active;

(2) Upon the evidence most favorable to the plaintiff, it could not properly be found that his efforts were the operating, predominating and efficient cause of the sale.

CONTRACT for a commission on the sale of leather of the defendant. Writ dated June 14, 1919.

In the Superior Court, the action was tried before *Macleod*, J. Material evidence and exceptions by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $6,667. The defendant alleged exceptions.

*S. Parsons, E. Parsons & P. F. Wadleigh*, for the defendant, submitted a brief.

*W. A. Murray*, for the plaintiff.

CROSBY, J. This is an action brought to recover a commission on the sale of certain leather by the defendant to Dungan, Hood and Company, Inc., of Philadelphia. The plaintiff in the spring of 1919 was a leather salesman. The defendant is a resident of Sweden, and was a shoe manufacturer and dealer in leather there. Dungan, Hood and Company, Inc., were manufacturers of and dealers in leather. About March 1, 1919, the plaintiff, who was in Sweden, saw the defendant and endeavored to sell him leather. As the result of a conversation between them at that time the defendant agreed to write the plaintiff confirming the talk, and forward details as to his (the defendant's) leather in America; and by letter written March 10, 1919, in the last sentence thereof, the defendant wrote: " In case you can

place any of the goods at a price that I find acceptable I shall be willing to let you have a commission of two per cent. of the goods sold." The plaintiff sailed for America April 1, 1919, and arrived in New York either on April 12 or 13. In May, 1919, Dungan, Hood and Company, Inc., bought the leather directly from the defendant for $270,448. It is upon this sale that the plaintiff seeks to recover a commission of two per cent. The jury returned a verdict for the plaintiff. The case is before this court on exceptions by the defendant to the refusal of the trial judge to direct a verdict in his favor, and to give certain requests for rulings.

Dungan, Hood and Company, Inc., will hereafter be referred to as the company. The leather which was so sold by the defendant to the company was originally bought by the defendant from the company and still held by the latter subject to the disposition of the former. They had been doing business with each other for many years, and the plaintiff did not, and could not, contend that he was entitled to a commission for having introduced the company to the defendant as a possible customer; his contention is that " it was a result of the plaintiff's activity, intervention, and interviews with the purchaser and his letter or letters to it," that the sale was finally consummated at a price satisfactory to the defendant.

The record shows that the negotiations which led up to the sale began January 29, 1919, when the defendant wrote the company expressing a view that prices were going down. On March 21, 1919, the company cabled in reply, " Letter January twenty ninth received. If you believe glazed kid going lower we will buy yours here paying invoice prices." Thereafter a series of letters and cablegrams passed between them, and on May 16, 1919, the company by cable offered to buy on terms which the defendant accepted, afterwards confirming his acceptance by letter of May 21, 1919. All these communications on the part of the company were carried on by its Philadelphia office, and especially by its treasurer, one Vaughan. He testified, in substance, that the company throughout the negotiations was governed as to its attitude by the condition of the market and that " the

intervention of Mr. Rich had nothing whatever to do with it." While the jury may have disbelieved this evidence, the burden still rested upon the plaintiff to prove that his services were the operating and efficient cause of the sale in order that he be entitled to recover a commission. In all the correspondence between the defendant and the company there is but one reference to the plaintiff; a letter of March 28, 1919, from the defendant to the company contains the following paragraph: " Some days ago a Mr. Thomas Rich came here from your country and asked to be informed as to the lots of leather that we had stored over there. This Mr. Rich was willing against a commission to place the goods for us. I therefore gave him specifications of the goods in question without any obligation on our part." It appears that this letter was received by the company on May 5, 1919, and therefrom it learned that the plaintiff was authorized to sell the leather; it may be that this possibility of competition was a factor in the determination of the company to purchase when it did. However, that is not evidence that the purchase was due to the plaintiff's efforts under such circumstances as to entitle him to a commission. The only letter the plaintiff wrote to the company that was answered was an inquiry dated May 5, 1919, respecting certain marks upon the leather. Neither this letter nor the answer thereto made any reference to the plaintiff as an agent to sell the leather, and had no relevancy to the issue between the parties except in one respect, which will later be referred to.

The plaintiff testified that he had nothing to do with the sale of the leather apart from the talk with one Carman, the manager of the company's office in Boston, and the letters in evidence. His recital of his entire dealings with the company is as follows: On his return to the United States from Sweden he called on Carman on April 14, and tried to interest him in the leather. Carman agreed to take the matter up with the " factory," and at a later date he said that he had heard from the factory, and that " they were apparently interested and were considering it." Later the plaintiff asked Carman if the latter " thought he had

better take up the matter direct with the factory " and on Carman's replying " As long as I have started it I would like to finish it," the plaintiff said " All right, we will let it go at that." About May 1, Carman asked the plaintiff what Behrn would accept for the goods; the plaintiff told him that fifty-five cents per foot was the price when he left Sweden; on Carman's suggestion he cabled to Behrn and secured an answer May 6, 1919, as follows: " Lowest price sixty cents table run;" he reported this to Carman. On May 14, 1919, the plaintiff received the company's letter of May 13, 1919, already referred to, which included the statement " we have delayed replying owing to the fact of our having been expecting a cable from Mr. Behrn in reply to an offer for his leather that we telegraphed to him recently.". Upon receipt of the foregoing the plaintiff sent the following letter dated May 14, 1919, addressed to Dungan, Hood and Company, Inc., at Philadelphia: " I have just received your letter of May 13, in answer to my letter of May 5th. I am somewhat surprised to learn that you have telegraphed to Mr. Behrn direct making an offer for these goods, as I talked with Mr. Carmen, the manager of your Boston office several times, and that I was engaged to sell the leather. He stated that he would take the matter up with the Philadelphia office to see if you were interested in buying these goods and I have been waiting to hear from him about it. Of course I am just as well satisfied that I now know you have cabled direct an offer to Behrn that you do the business direct for as I stated to Mr. Carman, Mr. Behrn has promised me a commission of 2% on such price as is acceptable to him. For your information in closing the deal with Mr. Behrn I wish to say that he impressed upon me his desire to get rid of the goods as he bought these before the armistice but for special reasons has been unable to get them out of the country. I do not need to talk to you about the quality of the skins as they are your own product. There is nothing I can add about them as you are in the position to know their real value. The point I do wish to make is that Behrn is anxious to sell as he is overstocked with leather and he bought the same for

sale and as the market is now slumped, he said he would not be able to use this great quantity of leather in his own factory in a lifetime. So you see there is a chance for a good trade. I cabled Behrn offering him 55c but he cabled back that he wanted 60c, table run. The reason I did not mention this in my letter of May 5th was because Mr. Carmen advised me to let him do the business with you and I would hear from him. I trust this makes the matter clear."

The plaintiff testified that he wrote two other letters to the company; none of the three was answered, and Vaughan, the treasurer of the company, testified that so far as he knew the letter of May 14 was never received. This letter was the only one which could have been received before the successful offer was made to the defendant on May 16, and it is the only communication addressed by the plaintiff to the Philadelphia office of the company which contained any effort to sell the leather to the company. There is no direct evidence that it was ever received, and there is no evidence whatever that it was received before May 16, or that it came to the attention of Vaughan before that time or afterwards.

There is no evidence that Carman had authority to bind the company in any manner respecting the purchase of the leather. Vaughan denied that Carman ever communicated with him concerning Rich; and Carman testified that the question of the company buying the leather was never discussed between him and the plaintiff. Against the testimony of these witnesses is the plaintiff's testimony which he is entitled to have taken as true for the purposes of the present case. But that testimony shows only what Carman said to him and what he said to Carman, and furnishes no affirmative proof whatever that anything he may have done in attempting to make a sale ever came to the knowledge of Vaughan or to any other person concerned in the sale, nor that it in any way affected the conduct of the company or any one authorized to act for it. Upon the entire evidence it is plain that the persons acting on behalf of the company who were instrumental in bringing about the purchase, either never heard of the plaintiff as a party

concerned in the making of any sale to them, or else wholly ignored him except as the possibility of his effecting a sale to some one else may have urged them to close the contract which they had been negotiating with the defendant long before the plaintiff had ever returned to the United States.

Upon the evidence most favorable to the plaintiff it could not properly be found that his efforts were the operating, predominating and efficient cause of the sale. Accordingly the defendant's first request for a ruling that the plaintiff was not entitled to recover should have been given. As that ruling should have been given the other exceptions need not be considered.

*Exceptions sustained.*