ALBERT H. McAUSLAN & another *vs.* CORA M. L. NOLAN.

Suffolk.    November 20, 1925. — January 7, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Broker*, Commission.  *Contract*, What constitutes.

Where, at the trial of an action by a real estate broker for a commission for procuring a customer for real estate of the defendant, on the plaintiff's evidence it appeared that an employee of the plaintiff called on the defendant and asked if he could have the selling of his property, that the defendant said that another person had an option for a few days, and that terms of sale were discussed; but there is no evidence warranting a finding or an inference that the defendant employed the plaintiff to secure a purchaser or did anything other than consider a contract offered by the plaintiff purporting to be in accordance with the defendant's terms, a finding is not warranted that there was either an express or an implied contract to pay the plaintiff a commission, and a verdict for the defendant must be ordered.

CONTRACT for $1,060, alleged to be due as a commission for procuring a customer "able, ready and willing" to buy real estate of the defendant at 18 Newbury Street in Boston. Writ dated April 16, 1923.

In the Superior Court, the action was tried before *Flynn*, J. The plaintiffs called as witnesses Herbert W. Pecker, Albert H. McAuslan, one of the plaintiffs, and the defendant.  The plaintiff's counsel then stated "that he had one further witness."  He then called one Gilbert M. Ross, who testified that he had signed an agreement to purchase the defendant's property and that at that time "he was able, ready and willing to purchase said property on the terms set out in said agreements."  In cross-examination, the witness Ross testified that when he signed the agreement he was in the employ of the plaintiffs.  After recross-examination, in which the witness stated in answer to a question by the judge in substance that he had "Very little" property that belonged to

him or stood in his name, "Not $5,500," without a motion by the defendant, the judge stated, "All right. I will order a verdict for the defendant. I think these parties are very close to a fraudulent transaction, in addition. Step down . . . . He says he did not have himself, of his own funds, $5,500, and, moreover, I think your parties are very close to a fraudulent transaction, because it does not appear that this man bargained for himself. He was buying it for McAuslan and Nutting, a corporation that he worked for, and he so testified, and if they approached this woman as a broker and they were buying it for themselves, they committed a fraud upon her . . . . I rule, as a matter of law, that he not having the money, you have not made out your case." A verdict accordingly was entered for the defendant, and the plaintiffs alleged exceptions.

The case was submitted on briefs.

*W. J. Drew & J. J. Twitchell,* for the plaintiffs.

*W. F. Davis, Jr., & J. J. Hayes,* for the defendant.

BRALEY, J. This is an action of contract by the plaintiffs, a firm of brokers, for a commission on an alleged sale of real property of the defendant. The plaintiffs' counsel, after the introduction of the evidence of one Pecker, their employee, who had charge of the negotiations, and of the plaintiff McAuslan, stated, that he had further witnesses. While the defendant's testimony, in substance, was in direct contradiction, the jury would have been warranted in finding on the evidence of Pecker and McAuslan the following facts.

Pecker called on the defendant, and asked if he could have the selling of her property at 18 Newbury Street, Boston. The defendant said that another party had an option which would not expire for two or three days. The property, however, was for sale for $46,000, of which she would take $6,000 in cash, a lease for five years of the entire building with an option of two years more, the rental to be $4,000 a year. The defendant was "to pay the expenses, except the interest on two mortgages . . . on the premises," and the interview ended. But two or three days later Pecker called again and told the defendant that he had with him some signed agreements which did not call for a lease of the

building, and "that there was not enough cash involved." The defendant objected to the agreements and told him the terms upon which "she would convey the premises," namely, $6,000 in cash, a lease for five years on the entire building at $4,000 a year, pay all the carrying charges, taxes and repairs except the interest on two mortgages, and also said that she would take "a receipt for $9,000 in rent which she would accept as part payment of the purchase price." Immediately after this conversation, new agreements of sale were prepared, which were signed by one G. M. Ross, and delivered to the defendant by Pecker, who said that the agreements complied with her request as to terms. The defendant, however, further said, "that she could not see anything the matter with them, but that she would submit them to her attorney before signing them." The defendant after some delay told Pecker in response to his inquiry that she had not been able to see her attorney, and later informed him "that she did not like the terms of the agreement and, in fact, that she had decided that she did not want to sell anyway." This witness also testified that the defendant never asked him to sell the property, and that the defendant had said to him in substance "that she did not care to deal with him." In reply to McAuslan's inquiry why she had refused to sign the agreements, she declined to discuss the question, and referred him to her counsel who would give "a full explanation of her reasons for not signing the same." And after McAuslan told him what had been done he was informed that the defendant "felt she was not indebted to the plaintiffs for the commission."

It is obvious that on such findings there was neither an express, nor an implied contract, and the plaintiffs had failed to show that either a commission or reasonable compensation for services rendered, had been earned. *Fitzpatrick* v. *Gilson*, 176 Mass. 477, 478. *Barton* v. *Powers*, 182 Mass. 467. *Edward T. Harrington Co.* v. *Waban Rose Conservatories*, 222 Mass. 372.

While the plaintiff did not expressly rest, and called Ross the proposed purchaser, on whose uncontradicted evidence it could be found not only that he was unable to pay in cash

the amount required, but was in the employment of the plaintiff, of which fact the defendant was ignorant, it is unnecessary to consider these questions. The judge, at the close of his evidence, announced that he should order a verdict for the defendant.

The verdict was ordered rightly. The plaintiffs had failed, as matter of law, to show any contract for reasons previously stated. Their subsequent offer of proof, that "Ross had a party at his command ready to take the property," which the judge rejected, as well as the rulings and comments on the evidence of Ross, to which the plaintiffs excepted, are immaterial.

*Exceptions overruled.*