CATHERINE A. WALSH *vs.* PETER L. GRANT.

Suffolk.    March 12, 1926. — June 30, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Broker,* Commission.  *Contract,* What constitutes, Performance and breach. ˙

A real estate broker has not earned a commission for the sale of certain land
    if, after the owner in March listed it with him "for sale at the price of
    $11,000," the broker in May showed it to some close personal friends,
    who refused to pay the price asked and who in August, without his
    taking further steps in the matter, themselves saw the owner and
    finally agreed to purchase the property at $10,100, of which $1,000 was
    to be paid by a note to the owner secured by a mortgage; there being no
    warrant for a finding that the owner "hired the plaintiff to get a cus-
    tomer for his estate," and the offer made, in effect to pay a commission
    if the broker produced a customer ready, able and willing to buy at
    $11,000 cash before the offer was withdrawn, never having been com-
    plied with by the broker.

CONTRACT for a commission alleged to have been earned
as a real estate broker.  Writ in the Municipal Court of
the City of Boston dated September 22, 1925.

Material facts appearing at the trial in the Municipal
Court are stated in the opinion.  There was a finding for
the plaintiff in the sum of $250 and the action was reported
to the Appellate Division, who ordered the report dismissed.
The defendant appealed.

*A. P. Gay,* for the defendant.

*W. H. Sullivan,* for the plaintiff.

WAIT, J.  The plaintiff, a real estate broker, seeks to
recover a commission upon a sale of real estate made by the
defendant to purchasers whose attention was first called
to the property by the plaintiff.  A judge of the Municipal
Court of the City of Boston found for the plaintiff.  The
Appellate Division of that court dismissed a report presented
by the defendant.  The case is before us upon an appeal from
the order dismissing the report.  G. L. c. 231, §§ 108, 109.

The material evidence set out in the report discloses the
following facts which are not disputed.  The defendant, in

February or March, 1925, listed his house on Appleton Street, Boston, with two brokers, Johnson and Company and the plaintiff, for sale at $11,000 cash. The house was shown to people sent by both brokers. No one, however, was willing to pay the price demanded; and in July the defendant decided to withdraw the house from the market. Word was sent by telephone in early July to Johnson and Company and received by them, to take the house off their list of houses for sale. On the same day the same message was telephoned to the office of the plaintiff, where it was received, in the absence of the plaintiff, by some one who promised to deliver the message to her, but who failed to do so. Sometime in the second week of August, Mr. and Mrs. Gilboy came to the house and asked if it was still for sale. The Gilboys were close personal friends of the plaintiff, who had been shown the house by her on May 4, and had talked over the price, $11,000, with her, but had refused to pay it. In August they were still looking for a house, and, being in the defendant's vicinity examining properties, and liking the house better than any they had seen, they had decided to visit it again and inquire. They were told that it was not for sale; but after conversation they obtained an agreement for a sale at $10,100, all cash. They said they would buy if they could get a mortgage, and they made a deposit of $50, which was to be returned if they were unable to get the mortgage. On August 27, they reported that they had obtained a mortgage, but could not pay all the balance in cash. A written agreement was made that day for a sale to them at $10,100, of which $1,000 was to be paid by a second mortgage to the defendant; and a further deposit of $100 was made.

The plaintiff did not learn of the sale till the middle of September. She did nothing with the Gilboys after showing them the house and talking price with them in May, except to speak to them once about the house. When she spoke and what she said did not appear. With this exception, since May 4 she had taken no active steps to obtain a customer as she thought the price too high and had not been told that a lower price would be accepted. She had told the

defendant that she thought the price asked too high, but she could get $10,000. ° She first learned that the property had been taken off the market on August 18, 1925, when the defendant's wife in passing her office had stopped and spoken with her.

The judge refused to rule that the plaintiff could not recover on this evidence. He found, among other things, that the defendant "hired the plaintiff to get a customer for his estate"; that "on August 18 the defendant first notified the plaintiff that the agency was revoked"; and that "But the Gilboys were her special friends and I am satisfied that had she not brought the house to their attention, no sale would have occurred." He ruled that on the facts he was warranted in finding for the plaintiff.

The defendant excepted to this ruling, and to the refusal to rule as requested.

The right of a broker to recover a commission depends upon whether he has done the thing which he undertook to do before his authority to do it has come to an end. *Cadigan* v. *Crabtree*, 179 Mass. 474. *Smith* v. *Kimball*, 193 Mass. 582, 585.

The plaintiff declared that "the defendant employed her to sell a certain parcel of land." She testified that the defendant "listed the property with her for sale at the price of $11,000." The judge found that the defendant "hired the plaintiff to get a customer for his estate." These are not the same thing. An employment "to sell," a hiring "to get a customer," and a "listing to sell at a price fixed," involve different considerations and result in different rights. *Smith* v. *Kimball*, 193 Mass. 582. *Walker* v. *Russell*, 240 Mass. 387, 389. *Elliott* v. *Kazajian*, 255 Mass. 459.

The uncontradicted testimony both of plaintiff and defendant establishes that no enforceable contract of employment was made when the property was listed. No consideration was then given for any promise. An offer was made to pay a commission, if the broker produced a customer ready, able and willing to buy at $11,000 cash before the offer was withdrawn. *Elliott* v. *Kazajian*, *supra*, and cases cited.

It is equally clear that the plaintiff never complied with the terms of this offer. The sale was made, not for $11,000 cash, but for $10,100 of which $1,000 was a second mortgage. The customer produced by the plaintiff was never ready or willing to pay $11,000 cash. Had no sale to this customer taken place, no one could successfully contend that the plaintiff had earned a commission. *Doten* v. *Chase,* 237 Mass. 218. *Caston* v. *Quimby,* 178 Mass. 153. *Ballou* v. *United Button Co.* 241 Mass. 457. The fact that a sale to the customer did take place does not give her a greater right. *Nichols* v. *Atherton,* 250 Mass. 215. *Whitcomb* v. *Bacon,* 170 Mass. 479, 481.

The cases which have allowed a recovery where a sale to the customer introduced by the broker has taken place, but on terms differing from those named to the broker, have been cases where there has been bad faith on the part of the owner; where the owner has sought to profit by the broker's exertions and to avoid paying him. Such are *O'Connell* v. *Casey,* 206 Mass. 520. *Semonian* v. *Bloomberg,* 253 Mass. 32. See *Witherell* v. *Murphy,* 147 Mass. 417.

Here there is no bad faith. The plaintiff did practically nothing after May 4. The defendant supposed the property withdrawn from the broker's hands. The purchasers, after abandoning the matter, took it up again by choice and of their own initiative, and sought the owner. The judge disregarded any element of bad faith and refused a ruling upon it. *Whitcomb* v. *Bacon, supra.*

If we were to assume that the plaintiff's undertaking was merely to introduce a purchaser to whom the owner should sell, she still would be unable to recover.

An owner has a right to terminate the authority of the broker at any time before the broker, performing his undertaking or complying with the terms of the offer, has fully earned his commission. *Cadigan* v. *Crabtree,* 179 Mass. 474; *S. C.* 186 Mass. 7. Notice to the broker is not essential. A sale through another broker, or to a third person not connected with the broker, puts an end to the authority although not known to the broker. Our law, unlike that of England, does not imply that the authority of the broker shall continue

for a reasonable time or until notice of revocation. *Cadigan* v. *Crabtree, supra. Des Rivieres* v. *Sullivan,* 247 Mass. 443, and cases cited. *Leonard* v. *Eldridge,* 184 Mass. 594. *Stuart* v. *Newman,* 241 Mass. 33, stands upon its peculiar facts, but in principle is in accord with the law as here stated.

We cannot follow *Hartford* v. *McGillicuddy,* 103 Maine, 224, *Reams* v. *Wilson,* 147 N. C. 304, and *Bash* v. *Hill,* 62 Ill. 216, cited by the plaintiff on this point. In *Emerson* v. *Ackerman,* 233 Mass. 249, *Witherell* v. *Murphy, supra,* and *Goward* v. *Waters,* 98 Mass. 596, the agreements provided for revocation.

Even if notice had been required, the information which came to the plaintiff on August 18 completed a revocation before any final terms with the purchaser had been settled. The plaintiff had not, then, secured a customer ready, willing and able to meet the owner's terms. *McAuslan* v. *Nolan,* 254 Mass. 363.

The revocation was made in good faith. The evidence does not show that the defendant knew that the plaintiff had been influential in calling the attention of the purchasers to the property, though it is a reasonable supposition that he did know it. It does show that he was justified in believing that the authority of the broker had ended.

The case is covered in principle by the decision in *Elliott* v. *Kazajian, supra.* It follows, therefore, that the evidence as matter of law does not justify the finding that the plaintiff was hired to secure a customer merely, and does require the ruling that the plaintiff cannot recover. The order dismissing the report was error. The finding of the judge must be set aside and judgment entered for the defendant.

*So ordered.*