JACOB HOROWITZ *vs.* S. SLATER & SONS,
INCORPORATED.

SAME *vs.* JACOB F. BROWN.

Suffolk.   October 17, 1928. — November 27, 1928.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Broker,* Commission.   *Corporation,* Officers and agents.   *Contract,* Construction.   *Agency,* Scope of authority.   *Deceit.*   *Evidence,* Competency, Relevancy and materiality, Cumulative.   *Practice, Civil,* Exceptions.

One who is president and general manager of a business corporation has no power, on behalf of the corporation, to enter into a contract with a broker to pay the broker a commission for procuring a purchaser for all or a substantial part of the property of the corporation, where no such power is conferred upon him, expressly or impliedly, by the by-laws of the corporation or by a vote of its stockholders or directors.

At the trial of an action upon a contract, the interpretation of the meaning of conversations which are alleged to constitute the contract is for the jury; testimony by a party to such conversations as to his understanding of their meaning is incompetent.

If a witness does not know how a certain contract, referred to in a certain paper which was before him, was formed, or to what the paper related, his understanding as to the nature of the contract is immaterial and incompetent.

At the trial of an action by a broker against a corporation for breach of an alleged oral agreement made with the corporation's president to pay the plaintiff a commission for procuring a purchaser for mills owned by the corporation, there was evidence that the plaintiff told the president he would like to get a customer for the mills; that at a later interview on October 6, 1921, in response to an inquiry by the president, he stated the commission he expected, which the president said was "all right"; that the president at that interview stated his price to be approximately a certain sum, and tore from a book and gave to the plaintiff a balance sheet containing figures relating to the mills; that the plaintiff submitted that price to a customer; that the plaintiff saw the customer on October 17 and October 27, but not thereafter, and was told by the customer on October 27 that he was not interested in the proposition; that the plaintiff never succeeded in arranging an interview between the president and the customer and never procured an offer from the customer; that he knew they were well acquainted with each other; that on December 13, 1922, the president wrote the plaintiff a letter in which he stated that the plaintiff's efforts were without authority and that the customer had known of and had considered the purchase of the mills long before the plaintiff met him. Through negotiations between the customer and the president commencing in November, 1922, the mills were sold by the corporation to the customer in April, 1923, for a price about one fourth of that quoted by the president to the plaintiff. The balance sheet given to the plaintiff by the president was introduced in evidence by the plaintiff. Upon exceptions by the plaintiff after a verdict for the defendant, it was *held*, that

(1) It was proper for the trial judge to permit the jury to look at a page of a certain printed manual, available to any one, which contained reports of the financial condition of corporations, including figures relating to the defendant corporation which were the same as those appearing in the balance sheet introduced in evidence by the plaintiff;

(2) In cross-examination of the defendant's president, who had been called by the plaintiff, it was proper to admit in evidence a letter from him to the customer, written in April, 1922, in answer to a letter already in evidence about the efforts of another broker, stating that the president thought it better that he did business directly with the customer without an intermediary, such letter being admissible in cross-examination, and also competent as an answer to the letter in evidence, as corroborative of the president's testimony, and upon the issue whether the plaintiff was the efficient cause of the subsequent sale;

(3) Testimony by the president of the defendant, who previously had testified that he kept in touch with purchases and sales of mills during the period from January 1, 1921, to 1923, that he knew of nobody who was buying mills during that period except the customer, was competent on the issue whether the plaintiff was the efficient cause of the sale.

It *was stated* that, if the plaintiff in the action above described were employed by the corporation as a broker, he could not recover a

commission because he did not appear from the evidence to have been the efficient cause of procuring a customer for the corporation's mills on its terms; and because his authority was revoked by the president's letter to him of December 13, 1922.

No prejudicial error appeared at the trial of an action in the exclusion of competent testimony which was substantially a repetition of previous testimony by the same witness.

With the action above described was tried an action of contract or tort by the broker against the president individually, seeking to recover on the same agreement and also on the ground that the president falsely represented to the plaintiff his authority to make such agreement on behalf of the corporation. The trial judge ordered a verdict for the defendant in this action. *Held,* that

(1) Since, even if the plaintiff had been given any authority, it was revoked by the letter of December 13, 1922, before he had earned any commission, he did not act to his prejudice upon any misrepresentation made by the president;

(2) The verdict for the defendant properly was ordered.

TWO ACTIONS OF CONTRACT. Writs dated June 19, 1923. By amendment the second action was changed to an action of CONTRACT OR TORT.

In the first action, the plaintiff sought to recover for breach of an alleged oral agreement made with the defendant's president, one Brown, to pay the plaintiff a commission for procuring a purchaser for mills owned by the defendant. In the second action, the plaintiff sought to recover against Brown individually on the same agreement and also on the ground that Brown falsely represented to the plaintiff his authority to make such agreement on behalf of the corporation.

In the Superior Court, the actions were tried together before *Raymond,* J. There was evidence that the plaintiff told Brown he would like to get a customer for the mills; that at a later interview on October 6, 1921, in response to an inquiry by Brown, he stated the commission he expected, which Brown said was "all right"; that. Brown at that interview stated his price to be approximately $8,500,000, and tore from a book and gave to the plaintiff a balance sheet containing figures relating to the mills; that the plaintiff submitted that price to one Wood, the president of the American Woolen Company; that the plaintiff saw Wood on October 17 and October 27, but not there-

after, and was told by Wood on October 27 that he was not interested in the proposition; that the plaintiff never succeeded in arranging an interview between Brown and Wood and never procured an offer from Wood; that he knew they were well acquainted with each other; that on December 13, 1922, Brown wrote the plaintiff a letter in which he stated that the plaintiff's efforts were without authority and that Wood had known of and had considered the purchase of the mills long before the plaintiff met him; and that, through negotiations between Wood and Brown commencing in November, 1922, the mills were sold to the American Woolen Company in April, 1923, for a price of $2,419,925.74. The balance sheet given to the plaintiff by Brown was introduced in evidence by the plaintiff.

A part of the judge's charge to the jury in the first action is stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant in the second action, and the jury returned a verdict for the defendant in the first action. The plaintiff alleged exceptions in each action.

*T. W. Proctor,* (*R. W. Nason* with him,) for the plaintiff.

*F. W. Knowlton,* (*C. F. Choate, 3d, & R. Wait* with him,) for the defendant S. Slater & Sons, Incorporated.

*E. O. Proctor,* for the defendant Brown.

SANDERSON, J. In the first of these actions the plaintiff seeks to recover a commission of five per cent on the purchase price for procuring the American Woolen Company as a customer to buy the South Village Mills, so called, of the defendant S. Slater & Sons, Incorporated, together with mill machinery, raw materials for manufacture, material in process of manufacture, manufactured goods and other property. The action is based upon an alleged oral contract between the plaintiff and the president of the defendant corporation, Jacob F. Brown, who is the defendant in the second action.

In the second action the plaintiff seeks to recover the same commission on the same sale, on the ground that the contract was made with Brown as an individual. Counts in tort were also added in this action, alleging that the defendant fraudu-

lently represented that he had authority to bind the corporation by the contract of employment of the plaintiff as a broker. The two actions were tried together. The judge directed a verdict for the defendant Brown and the jury found in favor of the defendant S. Slater & Sons, Incorporated. In the action against the corporation the plaintiff excepted to parts of the charge in which the judge instructed the jury, in substance, that upon the evidence Brown had no authority to make the alleged contract of October 6, 1921. Under the rulings in that action the question of the defendant's liability was to be determined by the jury upon the issue of ratification.

(1) The ruling to the effect that Brown, by virtue of his office either as president or general manager, had no authority to sell the mills or to employ a person to sell them, was right. By the verdict for the defendant corporation it was settled that the corporation did not ratify the employment of the plaintiff.

The corporation ran three mills. The one in question, referred to as the South Village Mills, was a woollen and worsted mill and had a greater value than either of the other mills, its output being about one half of the total business of the corporation. It is not within the implied powers of an officer of a manufacturing corporation to make conveyance of all or a substantial part of its property. *England* v. *Dearborn,* 141 Mass. 590, 592. *Selden Truck Corp.* v. *Selden Truck Service Co.* 257 Mass. 58. G. L. c. 156, § 42. See *Craig Silver Co.* v. *Smith,* 163 Mass. 262, 268; *Frederick* v. *Letteney,* 214 Mass. 46; *Sears* v. *Corr Manuf. Co.* 242 Mass. 395. A "contract . . . made by . . . officers . . . for which authority is primarily presumed . . . must be one within the power of the corporation itself to make . . . in the general course of its business." They may not contract to sell an integral part of the assets without special authority from the stockholders. *N. A. Berwin & Co. Inc.* v. *Hewitt Realty Co.* 191 N. Y. Supp. 817, 819, affirmed by Court of Appeals, 235 N. Y. 608. "The directors, and not the president, have the powers of the corporation, and the president has no implied authority as such to act as the agent

of the corporation, but, like other agents, he must derive his power from the board of directors or from the corporation." *Wait* v. *Nashua Armory Association,* 66 N. H. 581, 582.

There was nothing in the course of dealing between Brown and the directors or the stockholders of the defendant corporation to justify an inference that he had been clothed with authority to dispose of a substantial part of its assets such as the mill and all that went with it as a going concern. The by-laws gave him no such power. It did not appear that Brown had more authority to employ a broker to sell the mills than he had to sell the mills themselves. *Trulock* v. *Kings County Iron Foundry, Inc.* 216 App. Div. (N. Y.) 439, 447.

The case of *Henderson* v. *Raymond Syndicate,* 183 Mass. 443, is not in conflict with the cases cited. There the general manager was held to have authority to sell real estate which had come to the corporation as security for debt. As the property in that case had been acquired in the course of the business of the corporation and was not needed for the conduct of its business, the jury could find that the manager was authorized to make the sale and that the employment of a broker was necessary to effect the sale; this was not a sale of capital assets.

(2) The plaintiff testified, in substance, that when he told Brown on October 6, 1921, that Wood, the president of the American Woolen Company, would like some definite figures concerning the mills, Brown tore a piece from a page of a book and, after writing some further information on another slip, gave the papers to the plaintiff suggesting that he have them typewritten to submit to Wood. These papers purported to be a balance sheet showing the assets and liabilities of the defendant corporation with other information concerning it. The question — what the plaintiff, in his talks with Brown and in receiving the balance sheet, understood he was to procure a customer for, — was excluded subject to the plaintiff's exception. The plaintiff was also asked what, according to his understanding in his talks with Brown, was included in the term "mills," and what he under-

stood he was offering Wood when he talked with him on the subject of the purchase of the Slater Mills; the questions were excluded.   Counsel offered to show that the plaintiff would testify that he understood in his talks with Brown that he was to find a purchaser for the inventories as well as for the real estate, and that mills included inventories, supplies, furniture, spare machinery, unfinished goods and such things as that; and that in his talk with Wood he understood that Wood was to be the purchaser of the real estate, such part of the inventories as he saw fit to take, and unfinished goods and other personal property.   Testimony as to the understanding of the plaintiff concerning the matters to which the inquiries related was incompetent.   It was for the jury to say what both parties had a right to understand from the conversations and acts, but neither party could testify to his own interpretation of their significance.   *Miller* v. *Lord*, 11 Pick. 11.   The unexpressed understanding of one party cannot bind the other.   *West* v. *Platt*, 127 Mass. 367, 372, 373.   *Farnum* v. *Whitman*, 187 Mass. 381.   *Tallant* v. *Stedman*, 176 Mass. 460, 467.

The plaintiff also excepted to the exclusion of the question, asked by his counsel in direct examination of the treasurer of the Slater Mills, whether or not it was the treasurer's understanding that the contract referred to in a receipt, which was before the witness, was the proposal accompanying a letter of April 11, 1923, and its acceptance by the American Woolen Company.   It did not appear that the treasurer knew how the contract was formed or to what the receipt related, and his understanding was not material.

(3) The judge permitted the jury to look at a page of Poor & Moody's Manual marked for identification.   It was competent for the defendant corporation to prove that the information, which the plaintiff contended was given him by Brown to show the president of the American Woolen Company in response to a request, made by Wood, for more definite figures about the mills, was taken from a printed manual available to any one, and was in fact cut out of such a manual.   As the plaintiff had put in the balance sheet upon the ground that it had a tendency to prove that he

had been given information about the mills by Brown, it was competent for the corporation to show the source from which the figures came, and that similar figures were available to the public. The sheet was shown for the purpose of comparison and not as evidence of the facts stated upon it. If the information was available to the general public, that fact might have a bearing on the question whether the plaintiff's efforts were the predominating, effective cause of procuring a customer. In any event it does not appear that the plaintiff's rights could be prejudiced by reason of the fact that the jury were permitted to see a book with figures identical with those in evidence.

(4) The judge permitted the defendant's counsel in cross-examining the defendant Brown, called by the plaintiff, to introduce a letter from Brown to Wood, dated April 12, 1922, acknowledging the receipt from Wood's son of a copy of a letter from Wood to one Connelly, and containing the statement, among other things, that it would be a source of regret to the writer ever to do business with Wood at "arms length"; that "When it comes down to business it would be much more pleasant to get along without any intermediary. . . . If the time should come that I am convinced that the property is to be sold you may rest assured that before it is sold to any one you will have a good fair chance at it directly from me. In the meantime I think your attitude in not allowing any of these outsiders to get in an entering wedge is entirely proper."

Connelly was apparently trying to get a buyer for the property. The copy of the letter from Wood to him had been admitted in evidence without objection. It referred to the fact that some one else had called on Wood to tell him of the Slaters' wish to sell, and stated that Wood would deal with no one in the matter except Brown. The exception to the admission of the letter from Brown to Wood was general. It is now argued that the letter was a self-serving statement and should have been excluded on that ground. The letter was competent as an answer to a letter previously admitted in evidence. It was written before there was any suggestion of trouble or litigation and about six months after the time

that the plaintiff contended he was employed; the witness testified that when he wrote it he did not know that the plaintiff had seen Wood.   The letter was in its nature corroborative of the testimony of Brown and as such admissible in the discretion of the judge.   *Commonwealth* v. *Sacco,* 255 Mass. 369, 441.   See *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285.   Furthermore it was a material issue whether the customer was procured by Brown or by either broker, and whether either of them was the predominating and efficient cause of the sale later made to the American Woolen Company; and the correspondence between Wood and Brown in relation thereto was competent evidence.   ''The general rule that in the absence of a special agreement a principal by employing a broker to secure a customer for him does not deprive himself of the right to get a customer himself or through another broker, is settled.''   *Kimball* v. *Hayes,* 199 Mass. 516, 520.   *Rich* v. *Behrn,* 248 Mass. 450.

(5) The plaintiff excepted to the admission, during cross-examination of Brown by counsel for the corporation, of testimony tending to prove that Brown knew of no one on the North Atlantic coast who, during the period from January 1, 1921, to 1923, bought or was buying mills except the American Woolen Company.   He testified that he kept in touch with the sale of mills and he knew mills were sold during that period to that company.   The plaintiff contends that the testimony was not relevant to the issues and was prejudicial on account of its tendency to lead the minds of the jury away from the real issue.   The evidence was competent to aid the jury in weighing the conflicting testimony as to whether any contract of employment was made, and in passing upon the contention of the plaintiff that he brought the parties together and was the efficient cause of sale.   If it could be proved that the American Woolen Company was the only possible purchaser of woollen mills like that of the defendant corporation and Brown knew that this was so, the jury could properly consider this fact with the other testimony in deciding whether the plaintiff had sustained the allegations in the declaration.   The defendant corporation might be permitted to show that the situation was one in

which there was no need of an intermediary, to meet the plaintiff's contention that the relations of the parties were such that a broker was necessary to effect a sale. The plaintiff introduced correspondence extending over a period of years before 1923 tending to prove that Brown and Wood were intimate friends.

(6) In the case against Brown the judge excluded the questions, asked of the plaintiff by his counsel, whether, when he had the talks with Brown in April and October, 1921, he believed that Brown had authority lawfully to bind S. Slater & Sons, Incorporated, to an agreement for the plaintiff's employment as a broker, and whether he believed that Brown had authority to hire him as a broker for the Slater corporation. The witness testified that he was induced by Slater to go to see Wood to interest him in the matter. He was then asked "Now were you or were you not induced by what Mr. Brown said to you to go and see Mr. Wood?" and he replied "Yes, sir."

The plaintiff sought to prove that his contract was with the corporation and also that it bound Brown personally. He contended that if neither was liable in contract, he could recover against Brown in tort on the ground that he purported to have authority to make a contract to bind the corporation when in fact he had no such authority. On the issues raised by the tort counts it was incumbent on the plaintiff to prove that Brown made a contract in such form that the corporation would be bound if Brown had authority to act in the matter; that the plaintiff believed the representation implied in the transaction that Brown had authority to act for the corporation in making the contract, and that the plaintiff acted upon that belief to his damage. The questions excluded were competent as tending to prove the plaintiff's belief; but the witness was permitted to testify to his belief in the authority of Brown to make the contract that he did make and that he believed what Brown said to him: he could not be prejudiced by the exclusion of a substantial repetition of the testimony. Moreover the testimony, if admitted, could not have affected the ruling directing a verdict for the defendant Brown.

The plaintiff testified that he told Brown he would like to get a customer for the mills Brown was going to sell; that Brown said "which mills have you in mind?" and the plaintiff said "the woolen mills in the South Village"; that he asked Brown how large a proposition he had and Brown said about $10,000,000; that the plaintiff quoted this price to Wood; that at a later interview on October 6, 1921, Brown asked him what his commission was and he said that he would "work it" for five per cent; that Brown asked him if that was the usual commission and he said it was and Brown said that was all right; that he then asked Brown what his price was for these plants and Brown said they will figure out to about $8,500,000; that Brown gave him these figures to give to Wood and that he submitted to Wood exactly what Brown wanted him to submit; that he had to carry out and did carry out what Brown wanted him to do.

To earn a commission under the offer made by Brown, the plaintiff was to find a customer for the property willing to pay about $8,500,000. Upon the undisputed testimony the plaintiff procured no such customer. The total sum paid for the mills was $500,000 and for the inventories and other property $1,919,925.74. A broker who does not comply with the terms of an offer cannot recover a commission. *Elliott* v. *Kazajian*, 255 Mass. 459. *Walsh* v. *Grant*, 256 Mass. 555. *Pagum* v. *White*, 259 Mass. 437. *Flax* v. *Sovrensky*, 262 Mass. 60.

The plaintiff did not introduce Wood to Brown, and brought no offer to the corporation from Wood. He knew from the outset that the men were well acquainted with each other. Upon the testimony most favorable to the plaintiff he saw Wood four times, once in April, 1921, and once in September, 1921, before the contract upon which he relies was made; again on October 17, 1921; and on October 27, 1921, when he was told by Wood that he was not interested in the Slater Mills as he was financing another matter. He did not see Wood again but tried unsuccessfully to arrange an interview between Wood and Brown. The plaintiff testified in substance that the last time he saw Brown was in June or July, 1922, except when in December, 1922, Brown

told him he did not want to see him. On the testimony, the subject of the sale of the mills was discussed between Wood and Brown for the first time after the owner of one third of the stock took up the matter in November, 1922, or the early part of 1923. The plaintiff cannot successfully contend upon the evidence that he was the predominant and effective cause of procuring a customer for the mills. *Ward* v. *Fletcher*, 124 Mass. 224. *Whitcomb* v. *Bacon*, 170 Mass. 479. *Kimball* v. *Hayes*, 199 Mass. 516.

The plaintiff did not act to his prejudice upon any misrepresentation made by Brown, for the further reason that before any commission had been earned the authority to sell was revoked or the offer withdrawn by the letter of Brown dated December 13, 1922, in which he stated: "If, as you say, you have been talking with Mr. Wood for the purpose of interesting him in the purchase of the Slater Mills, you did so entirely without authority. Mr. Wood, I happen to know, has known of the Slater Mills and considered their purchase long before you ever met him. I cannot assent to the claim that your services have in any way contributed to Mr. Wood's being interested in the property." The negotiations between Wood and Brown which began November 16, 1922, continued until the sale in 1923. Wood had definitely rejected the plaintiff's overtures and notified him that the subject was closed more than a year before.

The court said in *Elliott* v. *Kazajian, supra*, pages 461, 462: "Until a contract comes into existence the owner can withdraw the offer; and although the broker may have incurred expense, have been put to trouble and have spent time and energy in the effort to fulfil the conditions of the offer, he has no claim for compensation. . . . The right to revoke is not dependent upon the reasons which may lead to its exercise, provided that it is exercised in good faith, which here means for any reason other than to obtain the results of the broker's efforts without paying for them." And again in *Walsh* v. *Grant, supra*, pages 557, 558: "The right of a broker to recover a commission depends upon whether he has done the thing which he undertook to do before his authority to do it has come to an end. . . . An owner has a

right to terminate the authority of the broker at any time before the broker, performing his undertaking or complying with the terms of the offer, has fully earned his commission." No contention has been made that the revocation was made in bad faith.

If the plaintiff had been employed as a broker, his authority was terminated by the letter dated December 13, 1922. It is unnecessary to decide whether previous to that date the offer of October 6, 1921, had expired by lapse of time. See *Park* v. *Whitney*, 148 Mass. 278; *Starkweather* v. *Gleason*, 221 Mass. 552; *Chatham Manuf. Co.* v. *Avery Chemical Co.* 235 Mass. 340, 345.

Exceptions not argued are treated as waived.

*Exceptions overruled.*