CHARLES W. CRAMER & another *vs.* ORRIN G. WOOD & another.

Suffolk.    December 8, 1938. — January 30, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Contract*, What constitutes.    *Broker*, Commission.

A finding that a commission for procuring a purchaser of real estate had been earned would not have been warranted by evidence showing merely that the defendant expressed a willingness to consider any offer the plaintiff might submit, that the plaintiff submitted an offer from a certain person which was not agreeable to the defendant, that subsequently the defendant, learning that person's name from the plaintiff, stated to the plaintiff that he had negotiated with that person before dealing with the plaintiff and that as to him the defendant had no occasion to consider a broker, that the plaintiff thereupon ceased to solicit that person, and that subsequently a sale was made to that person for a higher price than the plaintiff previously had submitted to the defendant.

CONTRACT. Writ in the Superior Court dated December 26, 1934.

A verdict for the defendants was ordered by *Walsh*, J., who then reported the case to this court.

*A. J. Lloyd*, (*J. C. Kane* with him,) for the plaintiffs.

*W. F. Byrne*, for the defendants.

RONAN, J. The defendants, trustees under the will of Arthur C. Thomson, were the owners of real estate in Hartford, Connecticut, which was adjacent to the property of the Travelers Insurance Company. The plaintiffs were attorneys, practising in Hartford, and had represented the estate in ancillary administration proceedings in Connecticut. In response to their written inquiries seeking an opportunity to earn a commission if the property was for sale, the New England Trust Company (hereinafter called the company) wrote them on May 8, 1929, that the "Trustees have established no asking price for the property but would be pleased to consider any reasonable offer you would care to submit." Cramer testified that he saw Zacher, the treasurer of the Travelers Insurance Company (herein referred to as the insurance company) some time late in May or in the early part of June, 1929; that Zacher did not then make any offer but did make an offer of $135,000 on June 5, 1929; that he (Cramer) wrote the company that "we have a prospective customer who will pay $135,000. for this property. . . . Will you please advise us relative to terms, etc., in case this offer is agreeable to you?" The offer was declined by the company and, in reply to a subsequent letter of the plaintiffs seeking an asking price, the company refused to submit a price but stated that it would consider any reasonable offer. Cramer again saw Zacher after August 22, 1929, when Zacher repeated his offer of $135,000 and, on September 11, 1929, wrote Cramer that he thought that the owners should state a price. In a letter to the company on September 16, 1929, Cramer wrote that he thought his customer might pay $150,000 and inquired if that would be acceptable. He again saw Zacher and tried to persuade him to increase his offer, but Zacher offered $135,000 in cash. On November 29, 1929, Cramer

wrote the company that he had an offer of $135,000 from Zacher of the Travelers Insurance Company. On December 6, 1929, the company sent him a letter in which it stated that it had been negotiating for several years with the insurance company for the sale of the property and had refused a previous offer of $150,000 and "so we feel that if we should ever sell to the Travelers, we have no occasion to consider any broker. . . . it is the feeling of the Trustees that if they do business with the Travelers, it will be direct and not through any broker." In reply to this letter the plaintiffs wrote under the date of December 19, 1929, that at the time they appeared in the ancillary proceedings they had received inquiries if the property was for sale, that they did not know at that time that the insurance company was interested, and that it was only after the defendants had authorized them to receive offers that they learned from the insurance company that there had been previous negotiations. In the same letter they informed the company that they had an inquiry from one who was "entirely disconnected from the Travelers." Thereafter the plaintiffs did nothing further to secure the insurance company as a customer but solicited others. Cramer's testimony was corroborated by that of the other plaintiff.

The defendants sold the property to the insurance company on January 20, 1931, for $140,000. There was considerable testimony that Zacher had first conferred with the defendants on December 12, 1927, and that there were other conferences and much correspondence up to December 18, 1930, when Zacher agreed to buy the property.

The judge directed a verdict for the defendants and reported the case to this court upon the stipulation of the parties that if his action was right then judgment was to be entered for the defendants, otherwise judgment was to be entered for the plaintiffs.

The plaintiffs allege that they were employed by the defendants to find a purchaser for real estate for which they were to be paid a commission; that the customer they found became the purchaser; and that they were entitled to a commission. The evidence is to be considered in its

aspects most favorable to the plaintiffs and, if it supports the essential allegations of the declaration, the case should have been submitted to the jury. *Salem Trust Co.* v. *Deery,* 289 Mass. 431. *Holton* v. *Shepard,* 291 Mass. 513.

The arrangement into which the parties had entered was evidenced entirely by letters. The services the plaintiffs undertook to perform were to secure an offer for the purchase of the real estate which would be satisfactory to the defendants. The activities of the plaintiffs were confined entirely to Connecticut, although there is nothing to show that they were not authorized to procure a customer wherever one could be found. It is unnecessary to decide whether the rights of the parties are to be determined by the law of Connecticut or by our own law, because neither party relied upon the law of Connecticut. The plaintiffs' brief expressly proceeds "on the theory that the case is governed by the law of Massachusetts." We deal with the case on this basis.

The evidence will not support a finding that the parties had entered into a contract. The plaintiffs did not bind themselves to do anything and there was no present consideration to support a promise to pay a commission. The entire evidence on this phase of the case is documentary. The defendants steadfastly refused to name a selling price but stated that they were willing to consider any reasonable offer the plaintiffs might present. All that the plaintiffs were authorized to do was to secure and submit offers to the defendants, who were free to refuse them, without incurring any liability to the plaintiffs. *Walker* v. *Tirrell,* 101 Mass. 257. *Cadigan* v. *Crabtree,* 179 Mass. 474, 480. The proposal of the defendants would not ripen into a contract until the plaintiffs had transmitted an offer that the defendants would accept, and the defendants could withdraw their offer at any time before performance by the plaintiffs. *Des Rivieres* v. *Sullivan,* 247 Mass. 443. *Elliott* v. *Kazajian,* 255 Mass. 459. *Walsh* v. *Grant,* 256 Mass. 555. *Flax* v. *Sovrensky,* 262 Mass. 60. *Russo* v. *Slawsby,* 276 Mass. 126.

As soon as the defendants learned that the plaintiffs had secured an offer from the insurance company, they refused to consider the offer; and they advised the plaintiffs, by their letter of December 6, 1929, that they had declined a previous offer of $150,000 and that, in dealing with the insurance company, they did not require any broker. The defendants had the right to revoke their offer to the plaintiffs or, if they desired, to limit its scope so as to exclude the insurance company. It is clear from the plaintiffs' letter of December 19, 1929, that they understood they were not authorized to negotiate with the insurance company; and they ceased further efforts in that direction. The plaintiffs recognized the right of the defendants to restrict their offer, and they abandoned the insurance company as a prospective customer. *Walsh* v. *Grant*, 256 Mass. 555. *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143. *Brooks* v. *Gregory*, 285 Mass. 197.

The plaintiffs contend that if the letter of December 6, 1929, was a revocation of the plaintiffs' authority to negotiate further with the insurance company, then the defendants were acting in bad faith. At the date of the letter the plaintiffs had not secured an acceptable offer. They did not show that the company's letter of December 6, 1929, did not correctly set forth the negotiations that had taken place between the insurance company and the defendants or that the exact situation then existing between them was not fully disclosed. There was no evidence tending to show that any matter was then pending between the insurance company and the defendants or that either, at that time, intended to reopen negotiations with the other. It was not until a year later that the insurance company and the defendants agreed upon the terms of sale. The record contains nothing indicative of deceit, misrepresentation, concealment or simulation by the defendants or either of them for the purpose of avoiding the payment of a commission. There is nothing whatever to show that the defendants were not acting in good faith. *Leonard* v. *Eldridge*, 184 Mass. 594, 595. *Delaney* v. *Doyle*, 267 Mass. 171, 177. *Palmer* v. *Cherney*, 270 Mass. 551, 556. *Bresnahan* v. *Brighton Avenue*

*Baptist Church,* 279 Mass. 300, 308. *Brooks* v. *Gregory,* 285 Mass. 197, 205.

The cases upon which the plaintiffs rely are plainly distinguishable. We have examined the various contentions of the plaintiffs and as we find no error, judgment is to be entered for the defendants in accordance with the stipulation.

*So ordered.*