WM. PEASE O'BRIEN INC. *vs.* AMERICAN RADIATOR &
STANDARD SANITARY CORPORATION.

Suffolk.    December 3, 1947. — January 5, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Broker,* Commission.

A verdict properly was ordered for the defendant at the trial of an action
by a real estate broker for a commission alleged to have been earned
when property of the defendant was sold to a customer whose name
had been given to the defendant by the plaintiff, where the evidence
showed that the plaintiff was not employed by the defendant to sell the
property and that it never was listed with the plaintiff, but, at most,
that the defendant gave the plaintiff permission to submit "any firm
offer," which he did not do.

CONTRACT.  Writ in the Superior Court dated September
24, 1945.

The action was tried before *Warner,* J.

*R. Donovan,* for the plaintiff.

*B. Aldrich,* for the defendant.

WILKINS, J.  In this action of contract by a real estate

broker to recover a commission, the judge ordered a verdict for the defendant, and the plaintiff excepted.

The defendant was the owner of real estate on Mount Vernon Street in the Dorchester district of Boston. In December, 1943, one O'Brien, the plaintiff's president and treasurer, talked with one Stafford, the defendant's real estate representative. O'Brien said that he had a customer he believed the defendant's building would suit, and tried to get Stafford to name a price. Stafford said they would want at least $200,000. At this meeting "no business was accomplished." Later in that month O'Brien wrote Stafford that one Bowe, president of the Herrick Company, "was seriously interested in the building"; to which Stafford replied, "Unfortunately, we are not equipped for the filing of names of prospects with us and it is our policy not to accept the filing of names of prospects unless they are accompanied by bona fide offers and reasonable amounts of earnest money." On March 11, 1944, O'Brien wrote the defendant: "It has come to my attention that there are changes contemplated in the handling of your real estate and I would like very much to discuss with you the handling of your Mt. Vernon Street, Boston, property. We have two corporations now definitely interested in the purchase of the property and believe we can handle it to your decided advantage." On March 13, 1944, the defendant replied: "Your letter of March 11th refers to the 'handling' of our Mt. Vernon Street, Boston, property. We presume you refer to the sale thereof. We are willing to consider sale of this property, but as stated in letter dated April 14, 1943, from . . . our Boston office to you, we do not care to list the property or create an agency with respect thereto. We will be glad to consider sympathetically any firm offer you have for the property and you can see the writer in New York at practically any time." In "the early part of 1944, it may have been May," O'Brien again saw Stafford and tried to get him to name a definite price, "but it then appeared that any price would have to exceed $250,000." O'Brien personally never showed the property to anyone with the possible exception of Bowe.

One Olinder, a real estate broker employed by the plaintiff, showed the outside of the property to one Appel, president of the A & P Corrugated Box Company, and arranged with the defendant "to get inside" after September 15, 1944, but did not show Appel the inside. He told Appel the price would have to be over $200,000. In June, 1945, Stafford told Olinder that "the price would have to be better than $285,000." On June 11 Olinder wrote Stafford for plans of the property, which were subsequently received. In the meantime he telephoned Stafford that his customer was the A & P Corrugated Box Company. He took the plans to Appel, who said he was not interested in $285,000, and as a consequence he had no further dealings with him. Previously, on September 20, 1944, Olinder had written Stafford that he had a prospective buyer, the B & B Box Company, and asked for permission to inspect the premises. On the following day the defendant had responded, granting permission to inspect, and concluding, "You will understand of course that your letter as well as this reply do not constitute the registering of the name of your client with us." Later Olinder telephoned Stafford that there was a typographical error in his letter, and that he knew of no B & B Box Company. In September, 1945, the A & P Corrugated Box Company purchased the property through another broker for $225,000.

The foregoing is the evidence most favorable to the plaintiff.

The judge was right in directing a verdict for the defendant. The property was not listed with the plaintiff, nor was the plaintiff employed by the defendant as a broker to sell. See *Elliott* v. *Kazajian,* 255 Mass. 459, 461; *Walsh* v. *Grant,* 256 Mass. 555, 557; *Corleto* v. *Prudential Ins. Co.* 320 Mass. 612, 616. In accordance with the correspondence, the plaintiff, at most, could have submitted "any firm offer," but it never did even that. Indeed, it would seem that it never had one to submit. It is plain that the plaintiff could not rightly have been found entitled to a commission from the defendant. *Cook* v. *Welch,* 9 Allen, 350. *McKeon* v. *Tyler,* 254 Mass. 142, 144–145. *McAuslan* v. *Nolan,* 254

Mass. 363. *Yurgelun* v. *Emery*, 282 Mass. 571. *Cronin* v. *National Shawmut Bank*, 306 Mass. 202, 210. In *Libby* v. *Ivers & Pond Piano Co.* 317 Mass. 478, the only case cited by the plaintiff, there was an express employment of the broker.

*Exceptions overruled.*